(No. 17599.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
EDNA E. FLANAGIN *et al.* Appellants.

*Opinion filed June 23, 1928—Rehearing denied October 5, 1928.*

204

Good, Childs, Bobb & Wescott, (James B. Wescott, and Esther A. Dunshee, of counsel,) for appellants.

Oscar E. Carlstrom, Attorney General, Harry A. Ash, and Joseph Rolnick, for the People.

Mr. Justice Dunn delivered the opinion of the court:

This is an appeal by Edna E. Flanagin, executrix of the will of Cornelius A. Flanagin, and Norris C. Flanagin, a devisee under the will, from an order of the county court of Cook county assessing an inheritance tax.

Cornelius A. Flanagin died on November 28, 1924, leaving a widow, Edna E. Flanagin, and his son, Norris C. Flanagin, his only heir. He disposed of his property by the following provisions of his will:

"I give, devise and bequeath, all of my estate, real, personal and mixed, of every kind and character, wheresoever situated, to my wife, Edna E. Flanagin, in trust for my son, Norris C. Flanagin, my said wife, however, to have all of the net income arising from my said estate, so long as she shall remain unmarried. In the event, however, that the income from my said estate shall not be sufficient to pay to my wife the sum of five thousand dollars ($5000) per year, during her life, or for such time as she shall remain unmarried, she shall have the right to sell or dispose of such part of my trust estate as shall, together with the income derived from my said estate, be sufficient to pay to her the sum of five thousand dollars ($5000) annually.

"In the event that my wife should re-marry subsequent to my death, it is my will that my estate, so bequeathed to her, in trust,

for the benefit of my son, Norris C. Flanagin, shall immediately upon her marriage, pass to and vest in my son, Norris C. Flanagin, absolutely, and should my son, Norris C. Flanagin, not be of age at that time, it is my desire that my wife be appointed his guardian until he shall have arrived at the age of twenty-one (21) years.

"Immediately upon the death of my wife, said estate heretofore given to her in trust, shall pass to and vest in my son, Norris C. Flanagin, absolutely.

"Should my son, said Norris C. Flanagin, die subsequent to my death and before the death of my wife, Edna E. Flanagin, leaving no surviving wife or child or children, then upon the death of my said wife, Edna E. Flanagin, I give, devise and bequeath the remainder of my estate to William H. Elden and Mary Elden, the father and mother of my said wife, share and share alike and in case either the said William H. Elden and Mary Elden shall not be then living, the remainder of my estate shall pass to the survivor of them, and in the event that both the said William H. Elden and Mary Elden shall not be living at such time, I give, devise and bequeath the remainder of my said estate, share and share alike, to Norris A. Elden and Ethel Roxburgh, and to the heirs of their body.

"Should my son, Norris C. Flanagin die, subsequent to my death and before the death of my wife, Edna E. Flanagin, leaving a wife surviving, but no surviving child or children, then upon the death of my wife, Edna E. Flanigan, the said wife of my son, Norris C. Flanagin, shall take the remainder of my said estate."

The court ascertained the total net value of the property passing under the will to be $122,912.07, and determined that under the terms of the will the estate was distributable for inheritance tax purposes as follows: To Edna E. Flanagin her widow's award of $7500 and income for life valued at $68,623.98, making a total of $76,123.98, of which $20,000 was exempt, upon which a tax was assessed of $1244.96; to William H. Elden the residue of the estate valued, after deducting the widow's award and life estate, at $46,788.09, $100 of which was exempt, upon which a tax was assessed under section 25 of the Inheritance Tax law of $5202.57.

On October 29, 1925, William H. Elden, Mary Elden, Norris Elden and Ethel Roxburgh filed in the probate court

a writing executed and acknowledged by them on October 22, by which they renounced "all interest which we may have in and to the estate of Cornelius A. Flanagin, deceased, by reason of the provisions of his said will, above referred to, and do hereby release and forever discharge the said estate and every part thereof, from any claim or interest which might at any time hereafter accrue to us by reason of the terms of the said will, it being agreed and understood that no one of the undersigned will at any time hereafter assert any claim or interest of any name, nature or kind in or to the said estate, or any portion thereof, by reason of the provisions of the said will." This document was in evidence before the court on the hearing, and it was shown that no money or other consideration was paid to the signers of the instrument for its execution, and it was stipulated that if Mrs. Flanagin were present she would testify that the purpose of the execution of the instrument by the persons who signed it was to obviate taxation of the estate under the provisions of section 25 of the Inheritance Tax law,—in other words, for the purpose of minimizing taxation. Norris C. Flanagin is twenty-one years old.

The devise to Norris C. Flanagin was a vested remainder in fee simple after the death or marriage of his mother, defeasible upon his death in his mother's lifetime, and in that case, if he left no surviving wife or child, his remainder would pass, by way of executory devise, to William H. Elden and Mary Elden, or the survivor of them if either were dead, and if both were dead, to Norris A. Elden and Ethel Roxburgh and the heirs of their bodies. Should he, however, leave a wife surviving but no child, then the remainder would pass by executory devise to his surviving wife. (*Boye* v. *Boye,* 300 Ill. 508.) Subject to his mother's life estate and to these contingencies he was the owner in fee simple of the property, and but for these contingencies, the happening of either of which would abridge his estate in fee simple and create a fee in one or more of

the executory devisees, the inheritance tax would have been properly fixed on the basis that he was such owner.

The limitation of the estate of Norris C. Flanagin being such that it might be wholly destroyed by the happening of the event of his death in his mother's lifetime, either leaving no wife or child or leaving a wife but no child, other interests being limited to be created upon the happening of either of those events, the situation is that which section 25 was enacted to meet. The persons in whom these interests might be created upon the contingencies mentioned in the will were all strangers to the testator, and the succession to them was subject to the highest rate of tax fixed by the law. The order of the county court was therefore correct unless the renunciation by the executory devisees renders the transfer to them void. That this was its effect there can be no doubt. The law is clear that a legatee or devisee is under no obligation to accept a testamentary gift. "It seems clear that the law does not compel a man to accept an estate, either beneficial or in trust, against his will, while it may reasonably presume, in the absence of evidence, that an estate has been accepted, especially where it is beneficial in its character. But when it turns out that the estate has not been accepted it remains in the original owner precisely as if the conveyance had not been executed. It has failed to be effectual to convey the estate and is by the disagreement of the party rendered null." (*Burritt* v. *Silliman,* 13 N. Y. 93.) "An estate vests, under a devise, on the death of the testator before entry. But a devisee is not bound to accept of a devise to him *nolens volens,* and he may renounce the gift, by which act the estate will descend to the heir or pass in some other direction under the will. The disclaimer and renunciation must be by some unequivocal act, and it is left undecided whether a verbal disclaimer will be sufficient. A disclaimer by deed is sufficient, and some judges have held that it may be by a verbal renunciation. Perhaps the case will be governed by circumstances."

(4 Kent's Com. 533.) "An heir-at-law is the only person who by the common law becomes the owner of land without his own agency or assent. A title by deed or devise requires the assent of the grantee or devisee before it can take effect." (3 Washburn on Real Prop.—6th ed.—402.) At page 700 it is said: "It is hardly necessary to add that no one can make another the owner of an estate against his consent by devising it to him, so that if the devisee disclaims the devise it becomes inoperative and goes to the heir." This doctrine has been announced in a great many decisions, among which are *Albany Hospital* v. *Albany Guardian Society,* 214 N. Y. 435, *Bradford* v. *Calhoun,* 120 Tenn. 53, *Defreese* v. *Lake,* 109 Mich. 421, *Welch* v. *Sackett,* 12 Wis. 243, *Estate of Stone,* 132 Iowa, 136, *King* v. *Gridley,* 46 Conn. 555, and *Watson* v. *Watson,* 128 Mass. 152. In these cases the rule is announced that the renunciation relates back to the moment when the gift was made, so that the estate does not vest but remains in the original owner precisely the same as if the will or deed had never been executed, or passes under the instrument, according to its terms, to another, (*Burritt* v. *Silliman, supra; Defreese* v. *Lake, supra; Bradford* v. *Calhoun, supra;*) and that a renunciation is not a voluntary conveyance and is not subject to attack by creditors. *Bradford* v. *Calhoun, supra.*

The appellee contends that the liability for an inheritance tax attaches to the right of succession—not to the property actually received by the beneficiaries; that the right to it vests in the State on the death of the owner, and cannot be defeated by changes of title, agreements or transfers of those who are entitled to share in the estate. These propositions are all correct, but they have no application to this case. The title of the act imposing the tax is, "An act to tax gifts, legacies, inheritances, transfers, appointments and interests in certain cases, and to provide for the collection of the same, and repealing certain acts therein named." By section 1 a tax is imposed upon the transfer of any prop-

erty, real, personal or mixed, or of any interest therein or income therefrom, in trust or otherwise, to persons, institutions or corporations not exempted by the act, in the cases specified in that section. A transfer of property is essential to the existence of the tax. By the language of the act the tax is imposed upon the right of succession, and the rate of the tax is fixed by the value of the property transferred and the relation of the transferees to the grantor, testator or decedent, the rate increasing by fixed steps as the value of the property transferred increases as specified in the statute, and also as the degree of relationship of the heir, devisee or grantee to the grantor, devisor or decedent becomes more remote. The right to the tax vests in the State on the death of the prior owner and cannot be defeated by changes of title, agreements or transfers of those who are entitled to share in the estate. It does not, however, vest until there is a transfer any more than it vests before the testator dies. The descent of property, whether by inheritance or devise, is regulated wholly by statute. All the property owned by any person passes at his death, either under the Statute of Descent to the persons mentioned in that statute, or under the Statute of Wills to his devisees and legatees. The Inheritance Tax law provides that all property so passing, whether under the Statute of Wills or the Statute of Descent, shall be subject to a tax at certain specified rates, which shall be due at the death of the decedent. The tax is not upon the estate of the decedent but upon the right of succession, and it accrues at the same time the estate vests,—that is, upon the death of the decedent. Questions may arise as to the persons in whom the title vests, and such questions may affect the amount of the tax and the person whose estate shall be chargeable with it, but when those questions are finally determined their determination relates to the time of the decedent's death. No changes of title, transfers or agreements of those who succeed to the estate, among themselves

or with strangers, can affect the tax. All questions concerning it must be determined as of the date of the decedent's death. *In re Estate of Graves, 242 Ill. 212.*

In this case Cornelius A. Flanagin died testate and his will disposed of all his estate. There was an executory devise in favor of his son's surviving wife, if he left a wife surviving. The effect of this need not be considered, for it does not affect the inheritance tax. There was another executory devise to strangers to the testator's blood in case of the testator's son dying leaving no wife and no children, and this devise would largely increase the inheritance tax. But the devisees refused to accept it. They renounced all interest in the estate and released it from all claim to the estate, or any part of it, by reason of any provision of the will. Under the authority which has been cited the devise to them failed to be effectual to convey the estate but the estate remained precisely as if the will had not been executed. The will made no change of title or transfer to the executory devisees, and there was therefore no basis for imposing a tax. Under the statute, whatever questions may have arisen as to the persons in whom the title vested are determined with relation to the time of the decedent's death. When it is finally determined that the will transferred no estate by way of executory devise, that determination relates to the time of the testator's death and leaves no basis for the assessment of a tax on the ground that there was such a transfer at the time of the testator's death. The entire beneficial interest in the estate passed at the death of the testator to his widow and his son, subject to the executory devise to the son's wife. The other executory devises having failed by the refusal of the devisees to accept them, the son held the estate, on the death of his father, free from that limitation.

The view that upon a renunciation of a devise by the devisees no estate passed by devise and no inheritance tax can be imposed upon the right of succession of the devisee

is also held in *Estate of Stone, supra,* and *In re Wolfe's Estate,* 85 N. Y. Supp. 949, the judgment in which was sustained in 179 N. Y. 599, without any additional opinion.

The appellee argues that the renunciation was a mere device intended to evade the payment of the tax, and that the execution of the renunciation, by whatever name called, amounts merely to an assignment of the interest of the devisees. The authorities all agree that the devisee cannot be vested with an estate against his will and he has a right to refuse it, and when not accepted it remains in the original owner as if no conveyance had been executed. The instrument cannot be regarded as a voluntary conveyance, since it was optional with the devisees to accept or renounce, and if it was held that their renunciation was merely a conveyance of the interest devised to them, this would constitute their act in renouncing and refusing to accept as an acceptance of the devise which vested the estate in them. The evidence is that they received nothing for the execution of the instrument, and there is no proof they did so. Their motive in executing the document was to minimize the inheritance tax, and this was not an unlawful motive for refusing to accept the devise. So long as they did not fraudulently receive a benefit for their action their motives were immaterial. *Bradford* v. *Calhoun, supra.*

In *United States* v. *Isham,* 17 Wall. 496, the defendant was prosecuted for issuing without a stamp, and with intent to evade the provisions of the act relating to internal revenue, a paper in the form of a draft drawn upon one Canda, who was the treasurer of the Iron Cliffs Company, by the defendant, who was its superintendent. The law imposed a stamp tax of two cents upon such a draft and a stamp tax of five cents upon a promissory note for the same amount. The prosecution contended that the instrument was legally a promissory note and should pay the five-cent tax, but that it was drawn in the form of a draft upon an individual for the purpose of evading the provisions of the

act in regard to a stamp. It was claimed that the transaction proved upon the trial was a device to avoid the payment of a stamp duty, and that its operation was that of a fraud upon the revenue. To this objection it was said that "if the device is carried out by the means of legal forms it is subject to no legal censure. To illustrate: The Stamp act of 1862 imposed a duty of two cents upon a bank check when drawn for an amount not less than $20. A careful individual having the amount of $20 to pay, pays the same by handing to his creditor two checks of $10 each. He thus draws checks in payment of his debt to the amount of $20 and yet pays no stamp duty. This practice and this system he pursues habitually and persistently. While his operations deprive the government of the duties it might reasonably expect to receive, it is not perceived that the practice is open to the charge of fraud. He resorts to devices to avoid the payment of duties, but they are not illegal. He has the legal right to split up his evidences of payment and thus to avoid the tax. The device we are considering is of the same nature." So here, while the renunciation results in depriving the State of a tax which it might have received if the devisees had accepted the devise instead of rejecting it, the act of renunciation is not illegal. In executing the instrument the makers were entirely within their rights. They were not bound to accept the devise in order that the State might collect a tax on it, and their motive in refusing is not open to investigation.

No tax was payable because of the attempted transfer to the executory devisees which failed. The tax should be distributed between the widow and her son.

The order of the county court is reversed and the cause remanded, with directions to assess the tax in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*