In the Matter of the Estate of Ivan S. Aylsworth, Deceased.

Gen. No. 65–65.

Third District.

September 9, 1966.

Moran, Klockau, McCarthy, Schubert and Lonsberg, of Rock Island, for appellant.

Kenneth E. Critzer, of Monmouth, and Barash & Stoerzbach, of Galesburg, for appellee.

ALLOY, J.

This is an appeal from an order of the Circuit Court of Warren County denying a petition for leave to make partial distribution in the Matter of the Estate of Ivan

S. Aylsworth, deceased. Ivan S. Aylsworth died on June 28, 1963, and in his will provided that the rest, residue and remainder of his estate was given, devised and bequeathed to John J. Kritzer, in trust, for the benefit of the son of the testator, Homer H. Aylsworth, for life. The annual income under the trust was payable to the son with a discretionary right in the trustee to reserve such portions as the trustee shall deem for the best interest of Homer Aylsworth and the will also contained the customary spendthrift trust provisions prohibiting the transfer or assignment of payments to Homer Aylsworth, the life tenant, in anticipation thereof, and providing also that payments would not be available for any obligation, including alimony, of Homer Aylsworth. The will further provided that upon the death of the son, Homer Aylsworth, the trustee was to sell and convert the real and personal property into cash and "the balance remaining in his hands, including proceeds from the sale of said lands and personal property, rentals and all other items of income, shall be divided into four parts and distributed in the manner following:

1. I give, devise and bequeath to Dwane Huston one part absolutely."

Similar provisions were made for three other beneficiaries. The will thereafter provided:

"It is further my will that in the event any of said legatees and devisees, namely: Dwane Huston, Dale Huston, Ruth Huston and Ralph Edwin Strickler die leaving child or children living at the date of distribution, it is my will that the part which such deceased legatee or devisee would have taken had he or she been living at the date of distribution shall pass to the child or children of the legatee or devisees so dying before said date of distribution."

377

The will had a further gift over if any of the named beneficiaries died "without child or children at the date of distribution" in which case the share was to be distributed to the other legatees or devisees named who survived at the date of distribution.

There was evidence by Homer Aylsworth to the effect that he had talked with the trustee shortly after his father's death and that when he requested money he was told "there wouldn't be any money in the Estate for a long time." Homer Aylsworth actually received no money until he was paid for a claim he had filed against the estate in March of 1964.

The record before us discloses that on April 13, 1964, Homer Aylsworth, the life tenant, pursuant to the Disclaimer Act of 1961 (1963 Ill Rev Stats, c 3, § 15(b), (c), (d)) and within 10 months following the date of the death of the decedent, disclaimed all interest in the trust established by his father's will. On the same day and as part of a transaction which led to the disclaimer, Homer Aylsworth entered into a written agreement with three of the four remaindermen and their spouses in which the remaindermen promised to convey their shares of the corpus of the trust property to Homer Aylsworth, and Homer Aylsworth in turn, agreed to execute a will naming the three remaindermen as his sole beneficiaries. Thereafter, three of the four remaindermen who had entered into the agreement with Homer Aylsworth, petitioned the court for leave to make partial distribution on the theory that the estate was solvent and there were more than sufficient assets to pay any claims outstanding against the estate as well as taxes. The trustee objected to the petition and alleged affirmatively that the petitioners falsely conspired to defeat the trust. Two of the four remaindermen had already filed a complaint for partition in May of 1964 but this partition suit was dismissed by the court and it is not in issue in the instant case.

Homer Aylsworth met with the three remaindermen and with Homer Aylsworth's attorney and the effect of a disclaimer was explained to all persons present. It was the plan and intent of the parties that Homer Aylsworth should file a disclaimer upon execution of the agreement; that the property would thereupon pass to the four remaindermen; that they in turn would deed the property to Homer; and Homer (pursuant to the written agreement executed on April 13, 1964) would leave it to them by will. The fourth remainderman to whom Homer Aylsworth had talked did not join in the agreement but Homer Aylsworth had entered into an understanding that this one-fourth interest was to be purchased for $30,000 and such figure was agreeable to all of the remaindermen.

A disclaimer could be made within 10 months of the date of the death of the testator, under the terms of the Disclaimer Act (1963 Ill Rev Stats, c 3, § 15(b), (c), (d)), where it is also provided:

> "Any conveyance of or contract to convey real property or any interest therein, or assignment or transfer of or contract to assign or transfer personal property, or written waiver of the right to disclaim the succession to real or personal property, by an heir, next of kin, devisee, legatee, person succeeding to a disclaimed interest, beneficiary or person designated to take . . . pursuant to judicial process, made before the expiration of the period in which he may disclaim as herein provided, bars the right to disclaim as to the property or interest."

In the instant case the Trial Court concluded that the agreement between the three remaindermen and the life tenant falls within the purview of the section of the act referred to and that the disclaimer was ineffective because the agreement was executed prior to April 28,

1964, which would have been within 10 months from the date of the death of the decedent, Ivan Aylsworth. In the process of so concluding, it was observed by the Trial Court that a beneficiary may disclaim any gift made to himself even though it is beneficial, and that one is not obligated to accept the benefit under all circumstances. The court likewise agreed that under the Disclaimer Act this right to disclaim applies equally to a spendthrift trust and that the motive for making the disclaimer is immaterial. In the present instance, it was observed by the court that if Homer Aylsworth executed and filed a disclaimer, he would be on firm ground regardless of the motive. He would thus have separated himself completely from any property interest involved and if the property would then have returned to him without further steps on his part as a result of the disclaimer, that is by operation of law, it would have been a true disclaimer. The court stated, however, that he did not do this. Instead he entered into a combination with three of the four remaindermen and executed a memorandum of agreement which had the effect of nullifying three-fourths of the purported disclaimer. If the fourth remainderman had also agreed, he would have nullified it completely.

The court observed that he was "disclaiming through the front door and reclaiming through the back door." The Trial Court then posed the question: "Is this a true disclaimer or an attempt to break the trust using a fake disclaimer as the excuse?" That court stated that if it were a true disclaimer the motive would not be material and also that it would be immaterial if the effect of a disclaimer would be to alter the testator's will so as to wipe out the spendthrift trust provision giving the life income to Homer Aylsworth. It was clear that the life tenant and the remaindermen understood that the action would break the trust and relieve the trustee. The court thereupon concluded that the memorandum

of agreement which was executed contemporaneously with the disclaimer brought it within the prohibitions of the Disclaimer Act.

On appeal in this court it is contended by the appellants that a vested remainder may generally be accelerated where time for its vesting and possession is shortened by the premature determination of the preceding estate, whether by renunciation or otherwise. In this connection it is contended that under the Illinois Disclaimer Act the Aylsworth spendthrift trust was effectively terminated and, likewise, that the contract to convey made prior to or simultaneously with the disclaimer could not have any legal effect for the reason that the spendthrift trust beneficiary was not in position to make a conveyance but simply acted to disclaim as he had the undoubted right to do under the Act and under the authority of People v. Flanagin, 331 Ill 203, 162 NE 848. Appellees, on the contrary, contend that we are dealing with contingent remainders which cannot be accelerated by disclaimer by the beneficiary of a spendthrift trust; that in any event neither partial nor full distribution can be made under the terms of the trust; and, also, that collusion between the life tenant and the remaindermen by virtue of their written agreement bars the disclaimer under the Disclaimer Act.

We are primarily concerned with the effect of the Disclaimer Act heretofore referred to in this opinion. In dealing with such provision, the author in James Illinois Probate Law & Practice (1965 Pocket Part, Vol 1, page 113) reviews some of the reasons for the section of the Act under consideration. He observes that it is sometimes necessary to sell real property in the decedent's estate before the expiration of the ten months in which a disclaimer can be filed. Thus, an heir or devisee can waive his right to disclaim for the purpose of clearing the title. The author then states (at page 114):

"Similarly, it is provided that various acts of a person entitled to disclaim in regard to the property, such as making a conveyance of or contract to convey real property or any interest therein, or an assignment or contract to assign personal property, bars the right of the person to disclaim as to the property or interest, and of all parties claiming by, through or under him."

In this cause the Trial Judge in announcing his decision found that the disclaimer violated the terms of the Disclaimer Act. The court observed that the disclaimer is dated on the same date on which it is filed, April 13, 1964, and that on the same date, a memorandum of agreement was executed between Homer Aylsworth and three of the four remaindermen which deals with the identical property which is disclaimed.

██ ██ It is argued in this court that Homer Aylsworth as beneficiary of the spendthrift trust, had no rights in the property so that he could not contract to convey it away or dispose of it in any manner. It is noted, however, that the disclaimer statute referred to gave him the right to disclaim, so that he does have such right in the property. If this act of disclaiming were all he had done, there would have been no violation of the Act, and what followed after the 10-month period had expired, irrespective of motive, would not have resulted in invalidating the disclaimer. In the case before us, however, Homer Aylsworth entered into a contract to leave the trust property by his will and this contract was made on the same date and within the 10-month period, and in consideration of the agreement of the remaindermen to convey to him. It was further made in consideration of his agreement to disclaim contemporaneously with the execution of the agreement. It could be argued theoretically that the disclaimer came first since an effective devise could not be made until after there was a disclaimer. It is noted, however, that the

382

essence of the agreement which was made by the parties was that the remaindermen were to convey the property to Homer Aylsworth following a disclaimer by Homer Aylsworth, and in consideration thereof, and that the agreement was further to be carried out by a devise by will of Homer Aylsworth of said property to the remaindermen. The entire transaction was made within the 10-month period. One of the remaindermen testified that the purpose of the agreement was to give Homer an unlimited life estate. The Trial Court posed an appropriate question in asking whether this was a true disclaimer or simply an attempt to break the trust by using a "fake" disclaimer as an excuse. It is apparent that the purpose of the arrangement and agreement made between the parties was to frustrate the testator's plan and to vest in Homer an unlimited life estate. On the basis of the record in this cause, we must, therefore, conclude that the Trial Court was justified in determining that the transaction constituted a violation of the Disclaimer Act and barred the right of Homer Aylsworth to disclaim the property interest he received under the will of Ivan Aylsworth.

■ ■ Other issues were raised in the briefs of the parties which require comment. It is seriously contended that we are dealing with a contingent remainder and that there could have been no effective disclaimer in any event. The interest which was devised to the various beneficiaries under the will of Ivan S. Aylsworth created a life estate in Homer Aylsworth and a remainder in certain named beneficiaries subject to being divested in the event any of these four died prior to the date of distribution. The date of distribution was to be at the termination of Homer Aylsworth's life estate. Such remainder interest in such four beneficiaries vested subject to being divested and such a devise is frequently referred to as a defeasible or determinable fee or an executory devise. As Professor Merrill I. Schnebly

observed in an article written in the 1951 University of Illinois Law Forum, at page 406, where a testator devises all property for life and at death to A and B in equal shares providing that if either A or B shall die during the period of the life of the life tenant leaving children surviving that such children shall take the share of the deceased parent, the remainder in such case is vested subject to divestiture by an executory devise over to the children of A and B. The author observes that while such a remainder is not absolutely vested, it is not a contingent remainder.

In the case of Danz v. Danz, 373 Ill 482, 26 NE2d 872, there was a similar provision in the will under consideration. In that case the court specifically held the remainder was vested and the court therein quoted from Gray's Rule Against Perpetuities, section 108, where the author states:

> "Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description or into the gift to the remaindermen, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested. Thus, a devise to A for life, remainder to his children, but if any child dies in the lifetime of A his share to go to those who survive, the share of each child is vested, subject to be divested by its death. But on a devise to A for life, remainder to such of his children as survive him, the remainder is contingent."

Recognition of the defeasible fee is also apparent in the case of People v. Flanagin, 331 Ill 203, 162 NE 848 and Slocum v. Hagaman, 176 Ill 533, 52 NE 332. Again, as Professor Schnebly stated in his article in the 1951 University of Illinois Law Forum, a typical contingent remainder would be one where a will devises a life estate to a life tenant with a gift over at the death of

the life tenant to children "then surviving." In the case before us we have a will in which the remainder is vested subject to being divested. In the event of a proper disclaimer by the life tenant the remainder would have been accelerated.

■ In support of the conclusion that a defeasible fee is destroyed by acceleration is Slocum v. Hagaman, 176 Ill 533, 52 NE 332. In that case after renunciation by the widow-life tenant, the nephews and nieces sought a partition and the court allowed it on the ground that the estate of the nieces and nephews had been accelerated by renunciation of the widow and that the property was no longer subject to the executory devise over. This was followed in the later case of Sherman v. Flack, 283 Ill 457, 119 NE 293, in which there was a defeasible fee after a life estate. In Danz v. Danz, 373 Ill 482, 26 NE2d 872, these conclusions were cited with approval. In that case, at page 489, the court stated:

> "The final question to be considered, is whether the remainder is prevented from being accelerated because of the executory devise over, which is limited to take effect in the event either remainderman should die before the time for distribution. Executory devises, being so limited that they would not have been permitted under the common law, were allowed as legal estates after the passage of the Statute of Wills, in order to prevent their defeat by the holder of the prior interest. . . .
>
> "The executory devise is destructible by arrival of the period for distribution, for if the time for division is reached before the happening of the contingency upon which the remainder is to be divested, the executory devise is defeated."

■■ Contingent remainders in this estate ordinarily are not destroyed by acceleration of the remainder where the widow renounces her life estate under the

will on the assumption that acceleration prior to fulfillment of the condition would defeat the expressed intent of the testator (Schaffenacker v. Beil, 320 Ill 31, 150 NE 333). In that case the court determined that it could not be ascertained who would take the remainder until the death of the widow. It is apparent, therefore, that the interests of the four remaindermen under the will of Ivan S. Aylsworth were vested subject to being divested and that if Homer Aylsworth had properly disclaimed his life interest, the executory devise over would have been destroyed and the remaindermen would have become absolute owners of the property in trust.

For purpose of clarification, we should point out that a proper disclaimer would have effectively terminated the trust in the instant case; that on termination of the life estate, the remainder would have been accelerated since there was obviously no showing of the testator's intent to keep the defeasible fee alive until the actual date of the death of Homer Aylsworth (if no life estate still remained in Homer Aylsworth). The purpose of postponing the final vesting in the remaindermen was simply to allow the life estate to operate in favor of Homer Aylsworth and for no other purpose. The circumstance also that Homer Aylsworth's life estate contains spendthrift trust provisions, did not evidence an intent to keep the defeasible fee alive nor would the spendthrift trust provisions operate to prevent a disclaimer.

On the record before us, however, the actions of the parties in the instant case in carrying into effect the agreement and in executing the disclaimer on April 13, 1964, made the disclaimer ineffective. We, therefore, conclude that the order of the Circuit Court of Warren County so finding, was proper and should be affirmed.

Affirmed.

CORYN, P. J., concurs.

386

STOUDER, J., concurring:

I agree and concur with the majority of the court concerning the conclusion that the purported disclaimer is invalid. However, having determined that the disclaimer is ineffectual, no determination of the character of the remainder is required. Consequently I take no position on that part of the opinion of the majority of the court with respect to the character of the remainder.