(Nos. 65980, 65996 cons.)

TOMPKINS STATE BANK, Appellant, v. DONALD R. NILES *et al.*, Appellees (Monmouth Grain and Dryer Company, Appellant).

*Opinion filed March 22, 1989.*

210

CALVO, J., took no part.

Lucas, Brown, McDonald & Conolly, of Galesburg (Dawn J. Conolly, of counsel), for appellant Tompkins State Bank.

Stansell, Critser, Whitman & Hultgren, of Monmouth (Richard L. Whitman, of counsel), for appellant Monmouth Grain & Dryer Co.

Jack P. Ball of Blake & Ball, and Thomas Pepmeyer, all of Galesburg, for appellees.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, Tompkins State Bank (the Bank), filed suit in the circuit court of Knox County to foreclose a mortgage on certain real estate. Donald and Mary Ellen Niles were named defendants as mortgagors. Donald was also named a defendant in his capacity as executor of his mother's estate. Monmouth Grain and Dryer Company (Monmouth) was also joined as a defendant because it claimed a lien on the allegedly mortgaged premises by virtue of a judgment against Donald. Other named

defendants were persons who might have an interest in the premises covered by the mortgage if a devise of those premises to Donald from his mother, Mildred L. Niles Peterson, was ineffective.

Monmouth filed a cross-complaint against Donald and Mary Ellen, seeking to foreclose its purported judgment lien on the mortgaged premises. Donald and Mary Ellen moved to dismiss the Bank's complaint and Monmouth's cross-complaint, arguing that they had effectively disclaimed any interest in the mortgaged property. The trial court denied their motion to dismiss and ordered foreclosure and sale, concluding that the defendants' attempt to disclaim their interest in the devised realty was barred by section 2—7(e) of the Probate Act of 1975 and was a fraudulent conveyance within the meaning of section 4 of the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 4). The appellate court reversed (160 Ill. App. 3d 226), holding that the disclaimers were not barred by the Probate Act and were not fraudulent conveyances. We granted Monmouth's and the Bank's petitions for leave to appeal (107 Ill. 2d R. 315).

The facts in this case are not in dispute. On August 8, 1977, Mildred L. Niles Peterson (hereafter, testator), as owner of the real estate that is the subject of this litigation, entered into a contract to sell it to her son, Donald Niles, and his wife, Mary Ellen Niles. On April 25, 1983, the Niles executed and delivered to the plaintiff, Tompkins State Bank, an instrument which purported to mortgage the property described in the real estate contract, and four other tracts of land apparently owned by Donald, to secure several outstanding notes. In the mortgage instrument, the Niles assigned all of their interest in the real estate contract to the Bank as security for all obligations due to the Bank. On February 28, 1985, the testator declared Donald and Mary Ellen Niles in breach of the contract for the sale of the real es-

tate, on the ground that they, by purporting to mortgage their interest to the Bank, violated a provision of the contract prohibiting assignments without the consent of the vendor, and thereby forfeited their interest in the contract. The parties do not dispute the validity of this forfeiture and agree that Donald, Mary Ellen and all persons claiming through them lost all interest in the contract at the time of the declaration of forfeiture.

On June 7, 1985, the testator died having made a will naming Donald as her executor and leaving him all of her property. The will further provided that in the event that Donald predeceased the testator, the property would be placed in trust for the benefit of Mary Ellen and the couple's children. The will was admitted to probate on July 25, 1985, and on July 26, 1985, Donald filed a disclaimer with the Knox County circuit court and the recorder of deeds. Mary Ellen filed a disclaimer on March 6, 1986. Meanwhile, on July 30, 1985, defendant Monmouth Grain and Dryer Company obtained a judgment against Donald, which it filed with the Knox County recorder of deeds on October 7, 1985.

On February 10, 1986, the Bank filed suit in the circuit court of Knox County to foreclose its mortgage on two of the four tracts of property described in the mortgage instrument. Donald, Mary Ellen, Monmouth and others who might have an interest in the property were joined as defendants. Monmouth filed a cross-complaint against Donald, Mary Ellen and others, seeking to enforce its purported lien on the real estate. In response, the Niles filed a motion to dismiss the Bank's complaint and Monmouth's cross-complaint insofar as they related to the property described in the real estate contract and subsequently devised to Donald. At the hearing on the motion to dismiss, the Niles argued that their disclaimers terminated any interest they had in this property, that the disclaimers were not barred under section 2—

7(e) of the Probate Act and were not fraudulent convey-
ances within the meaning of the Statute of Frauds (Ill.
Rev. Stat. 1985, ch. 59, par. 4). On this appeal the prop-
erty at issue is that described in the real estate contract
and subsequently devised to Donald. The other four
tracts which Donald owned and mortgaged are not in-
volved.

Upon the trial court's denial of their motion to dis-
miss, the Niles stood on their motion and refused to
plead over. The court declared them in default and, after
a hearing, entered a decree: (1) establishing the Bank's
mortgage as a first lien on the property in the amount of
$365,354.04; (2) establishing Monmouth's judgment as a
second lien in the amount of $10,044.63; and (3) ordering
foreclosure and sale. Donald, in his individual capacity
and as executor, Mary Ellen and others with an interest
in the property filed appeals to the appellate court.

The appellate court, with one judge dissenting, re-
versed. (160 Ill. App. 3d 226.) The court first held that
section 2—7(e) of the Probate Act did not bar Donald
and Mary Ellen from disclaiming their interest in the
property. Relying on *In re Estate of Aylsworth* (1966), 74
Ill. App. 2d 375, the court stated that the legislature en-
acted section 2—7(e) to facilitate transfers and other
transactions with regard to devised property in a reason-
able time following a testator's death when a devisee
may exercise his right to disclaim, and it was not for the
benefit of or to assure fairness to creditors of the person
disclaiming. The court therefore concluded that section
2—7(e) barred disclaimer only when the devisee con-
veyed, encumbered or otherwise transferred the interest
being disclaimed after it had passed by devise, inheri-
tance or otherwise to the person or entity attempting to
disclaim. Because the Niles had encumbered the property
before it passed by devise to them, the court concluded
that their disclaimers were not barred under section 2—

7(e). The appellate court also concluded that the disclaimers were not fraudulent conveyances within the meaning of the fraudulent conveyance statute (Ill. Rev. Stat. 1985, ch. 59, par. 4). Because the court decided for the defendants on the above-stated grounds, it did not address their argument that, contrary to the Bank's contention, the after-acquired-title doctrine did not apply under the facts of this case. This court granted the Bank's and Monmouth's petitions for leave to appeal (107 Ill. 2d R. 315.)

The questions presented are: (1) whether the disclaimers executed by the defendants, Donald and Mary Ellen Niles, are barred by the disclaimer provisions of section 2—7(e) of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 2—7(e)) and (2) whether the disclaimers were fraudulent conveyances within the purview of the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 4).

We first consider whether section 2—7(e) of the Probate Act (Ill. Rev. Stat. 1985, ch. 110½, par. 2—7(e)) bars Donald from disclaiming his interest in the devised property. That statute provides:

"Waiver and Bar. The right to disclaim property or a part thereof or an interest therein shall be barred by (1) a judicial sale of the property, part or interest before the disclaimer is effected; (2) an assignment, conveyance, encumbrance, pledge, sale or other transfer of the property, part or interest, or a contract therefor, by the disclaimant or his representative; (3) a written waiver of the right to disclaim; or (4) an acceptance of the property, part or interest by the disclaimant or his representative." (Ill. Rev. Stat. 1985, ch. 110½, par. 2—7(e).)

The Bank argues that the mortgage, containing covenants of title, which Donald and Mary Ellen Niles executed in the Bank's favor in April 1983, regarding the four tracts and the property contracted for sale, constitutes an "encumbrance" on the devised real estate

within the meaning of section 2—7(e) of the Probate Act and bars Donald from disclaiming his interest in the devised property.

The Bank concedes that Donald did not have legal title to the property at the time he executed the mortgage and that Donald's interest in the property, and the interests of all claiming through him, were forfeited by the vendor when Donald breached the contract. The Bank argues, however, that title to the property vested in Donald as the devisee, upon the testator's death, and that its mortgage lien thereby attached to and encumbered the devised property, by operation of the after-acquired-title doctrine.

The doctrine of after-acquired-title, codified as section 7 of "An Act concerning conveyances" (Ill. Rev. Stat. 1983, ch. 30, par. 6), provides that if a person sells or conveys to another an estate in land which the vendor does not possess, but then after the sale or conveyance, the vendor does "become possessed of and confirmed in the legal estate to the land or real estate so sold or conveyed," the vendor holds the subsequently acquired estate in trust for the person or entity to whom the original conveyance was made. The after-acquired-title doctrine is based upon the principle that where one having no title or imperfect title purports to convey good title to another, and afterwards acquires good title to the land, the subsequently acquired title should and does inure to the benefit of the original grantee.

The after-acquired-title doctrine can be applied to mortgages as well as to conveyances by warranty deed, when the mortgage instrument contains covenants of title. (*Roderick v. McMeekin* (1903), 204 Ill. 625; *Lagger v. Mutual Union Loan & Building Association* (1893), 146 Ill. 283; see 4 H. Tiffany, The Law of Real Property §1231 (3d ed. 1975).) A mortgage which contains the words "and warrants" has been held to be equivalent to

a mortgage containing all covenants of title. (*Roderick v. McMeekin* (1903), 204 Ill. 625.) When such a mortgage is given, title subsequently acquired by the mortgagor inures to the benefit of the mortgagee, and the mortgagor is estopped from denying that he had title at the time the mortgage was executed. *Lagger v. Mutual Union Loan & Building Association* (1893), 146 Ill. 283.

The question is whether those holdings are to be applied here. The Bank argues that title to the devised property vested in Donald, the devisee, within the meaning of the after-acquired-title statute, immediately upon the testator's death and that its mortgage lien attached to and encumbered the devised estate. It further argues that section 2—7(e) of the Probate Act bars disclaimer of property so encumbered. Donald, on the other hand, argues that his disclaimer precluded a vesting in him of any estate or interest in the property and therefore barred the Bank's mortgage lien from attaching to the devised property under the after-acquired-title doctrine.

The appellate court did not decide whether the after-acquired-title doctrine was applicable here. The court assumed, only for the purpose of its opinion, that the Bank's mortgage lien constituted an encumbrance upon the devised property. The court then held that section 2—7(e) of the Probate Act did not bar a disclaimer of property encumbered before the testator's death; disclaimer would be barred only when the property was encumbered *after* it passed by devise, inheritance or otherwise.

The Bank's mortgage could encumber the devised property (and thus bar a disclaimer under section 2—7(e) of the Probate Act) only if title vested in Donald, the devisee, under the after-acquired-title statute, immediately upon the testator's death. Specifically, the after-acquired-title doctrine could apply to the disputed mortgage only if Donald became "possessed of and confirmed in the le-

gal estate to the land or real estate" devised to him immediately upon the testator's death. See Ill. Rev. Stat. 1985, ch. 30, par. 6.

Consequently, we must first look to the nature of Donald's interest in the devised property between the time of his mother's death and the time he filed his disclaimer. We must determine whether Donald became "possessed of and confirmed in the legal estate to the land or real estate" upon which he had executed the mortgage, within the meaning of the after-acquired-title statute.

As a general proposition, devised realty passes directly to the devisee, rather than to the executor of the estate, upon the death of the testator. (*Trustees of Schools v. Clippinger* (1949), 404 Ill. 202; *In re Estate of Hall* (1984), 127 Ill. App. 3d 1031.) Admission of a will to probate actually effects a transfer of title to realty from the testator to the devisee. (Ill. Rev. Stat. 1985, ch. 110½, par. 4–13.) This rule is based upon a presumption that a devisee will accept a testamentary gift, especially where it is beneficial in character. The presumption of acceptance does not operate to vest title to the devised property irrevocably in the beneficiary.

The transfer of property by devise requires not only an affirmative act by the testator, but also the assent of the devisee. (*People v. Flanagin* (1928), 331 Ill. 203.) If a devisee refuses to accept the property devised to him, there is not a completed gift, but only an attempt. (*Cook v. Dove* (1965), 32 Ill. 2d 109, 114.) Although acceptance may be presumed in the absence of an expressed intent to the contrary, a devisee is under no duty to accept a gift, and title thereto may not be vested in the devisee against his will. (*Cook v. Dove* (1965), 32 Ill. 2d 109.) The right to disclaim or renounce a gift was recognized in *People v. Flanagin* (1928), 331 Ill. 203, where this court stated:

" '[A] title by deed or devise requires the assent of the grantee or devisee before it can take effect.' (3 Washburn on Real Prop.—6th ed.—402.) At page 700 it is said: 'It is hardly necessary to add that no one can make another the owner of an estate against his consent by devising it to him, so that if the devisee disclaims the devise it becomes inoperative and goes to the heir.' This doctrine has been announced in a great many decisions *** [citations]. In these cases the rule is announced that the renunciation relates back to the moment when the gift was made, so that *the estate does not vest* but remains in the original owner precisely the same as if the will or deed had never been executed, or passes under the instrument, according to its terms, to another ***." (Emphasis added.) *Flanagin*, 331 Ill. at 208.

The Probate Act has codified this right to disclaim. The disclaimer provisions of the Probate Act specify that a present property interest, when disclaimed, shall descend or be distributed as if the disclaimant had predeceased the decedent and that "the disclaimer shall relate back to such date *for all purposes.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 110½, par. 2—7(d).

From the time the testator died until Donald disclaimed, Donald had the right or power either to accept or disclaim the devise of property made in the testator's will. Had Donald accepted the devise, title to the realty would be considered to have vested in him at the time the testator died. Donald, however, did not accept the gift, but disclaimed any interest in the devised property. The Bank argues that its mortgage already encumbered the devised real estate at the time Donald attempted to disclaim. As stated, however, the Bank's mortgage lien could encumber the devised property, by virtue of the after-acquired-title statute, only if Donald actually acquired title to or became "possessed of and confirmed in the legal estate" to the real estate devised to him within the

meaning of the after-acquired-title statute. Ill. Rev. Stat. 1985, ch. 30, par. 6.

Under the disclaimer statute, Donald's disclaimer related back to the date of the mother's death and had the legal effect of barring passage of title to him or the vesting of an estate in him. (*People v. Flanagin* (1928), 331 Ill. 203; *In re Estate of Hansen* (1969), 109 Ill. App. 2d 283.) Moreover, the statute provides that the disclaimer relates back "for all purposes" to the date of the decedent's death. There are numerous holdings that a disclaimer will relate back to the date of the decedent's death even where giving effect to the disclaimer acts to defeat the rights of creditors or taxing authorities or prevents the assertion of a claim of right to dower. (*People v. Flanagin* (1928), 331 Ill. 203; *In re Estate of Hansen* (1969), 109 Ill. App. 2d 283; *In re Estate of Aylsworth* (1966), 74 Ill. App. 2d 375; see also Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act, comment to section 3, 8A U.L.A. 103 (1983).) Because Donald never became "possessed of or confirmed in the legal estate" to the property described in the mortgage instrument, the Bank is precluded from claiming that its mortgage lien encumbered the devised property by virtue of the after-acquired-title statute.

The Bank argues that section 2—7(e) of the Probate Act bars Donald from disclaiming his interest in the devised property. As stated, section 2—7(e) provides, in part, that the right to disclaim shall be barred by an encumbrance of the property. (Ill. Rev. Stat. 1985, ch. 110½, par. 2—7(e).) A reading of the mortgage instrument, however, shows that the Bank's mortgage lien does not encumber the devised estate. It is true that a mortgage instrument which contains the words "and warrants" is typically construed as making covenants of title to the real estate described therein. (Ill. Rev. Stat. 1985, ch. 30, par. 10.) The mortgage instrument that

Donald executed purports to "mortgage and warrant" all of the tracts of land described in the mortgage instrument. The document then describes five separate tracts of land. Donald apparently owned four of the five tracts of land in fee simple. He could thus warrant title to those tracts of land. The fifth tract of land described in the mortgage instrument is the subject of this litigation. Donald did not own this tract of land, and thus could not warrant legal title to the tract. Instead, he simply assigned his interest in the contract to purchase this real estate to the Bank as security for all obligations due to the Bank.

The Bank cannot claim that it was misled or induced to extend credit to Donald in reliance upon the covenants of title he purportedly made as to this fifth tract of land or that it was unaware of the nature and extent of Donald's interest in this tract of land at the time he executed the mortgage. The mortgage document specifically states that Donald executed an agreement to purchase the tract of land from his mother and was assigning his right, title and interest in the purchase agreement to the Bank as security for the loan.

Although Donald executed a mortgage on this fifth tract of land, he did so in his capacity as vendee under a contract for the sale of realty. The mortgage encumbered only the equitable interest Donald had in the purchase agreement with his mother. All of the parties agree that Donald's interest in the purchase agreement, and the interests of all claiming through him, were forfeited by his mother, the vendor, when Donald breached the contract as stated above, by assigning his interest to the Bank without the vendor's consent. The Bank's mortgage lien was not revived simply because Donald subsequently acquired the same tract of land by devise from his mother. The Bank knew, at the time the mortgage was executed, that the purchase contract between Donald and his

mother specifically prohibited assignment of the contract without the prior written consent of the vendor. The Bank knew or should have known that Donald breached the contract and forfeited the very property interest which the mortgage encumbered when he executed the mortgage assigning his interest in the purchase contract to the Bank as security. The Bank may not now claim that it is entitled to a property interest which Donald did not encumber and upon which it had no right to rely.

In any event, even if we were to accept the defendant's argument that Donald acquired title to the devised property at the time of the testator's death, within the meaning of the after-acquired-title statute, we would conclude that section 2—7(e) does not bar the disclaimers made here. We do not, however, adopt the appellate court's conclusion that the legislature intended section 2—7(e) to bar disclaimer only when the person attempting to disclaim has encumbered or otherwise transferred the property interest after the testator's death. Rather, we conclude that the legislature intended section 2—7(e) to bar disclaimer whenever a devisee, before disclaiming, has engaged in transactions or dealt with the property in a manner which is inconsistent with a complete renunciation of any interest in or power over the property.

In reaching this conclusion, we are guided by the court's analysis in the case of *In re Estate of Aylsworth* (1966), 74 Ill. App. 2d 375. In *Aylsworth*, the court considered whether the life beneficiary of a testamentary trust was barred from disclaiming his interest in the trust. The disclaimer statute in effect when *Aylsworth* was decided provided that:

"Any conveyance of or contract to convey real property or any interest therein, or assignment or transfer of or contract to assign or transfer personal property, or written waiver of the right to disclaim the succession to real or personal property, by an heir, next of kin, devisee, leg-

atee, person succeeding to a disclaimed interest *** or any sale or other disposition of real or personal property pursuant to judicial process, made before the expiration of a period in which he may disclaim as herein provided, bars the right to disclaim as to the property or interest." (Ill. Rev. Stat. 1963, ch. 3, par. 15d.)

In *Aylsworth*, the life beneficiary of a testamentary spendthrift trust attempted to disclaim his interest in the trust. Before disclaiming, however, the beneficiary entered into an agreement with the remaindermen of the trust in which the beneficiary promised to execute a will naming the remaindermen as his sole beneficiaries in return for the remaindermen's promise to convey their share of the trust property to the beneficiary. Although the beneficiary's actions did not fall within the specific language of the statute barring disclaimer, the court held that he was barred from disclaiming. The court reasoned that a disclaimer is invalid when a devisee, prior to disclaiming, deals with the devised property in a manner which was inconsistent with a complete renunciation of any interest in or power over the devised property. The *Aylsworth* court concluded that, having asserted a right to deal with the testamentary trust, the beneficiary was thereafter barred from disclaiming his interest in the trust.

The Bank argues that the *Aylsworth* court's interpretation of the disclaimer statute is no longer relevant, because the legislature subsequently amended that statute to state that the right to disclaim shall also be barred by an encumbrance or pledge of the devised estate. The amendment of the disclaimer statute, it argues, evidences the legislature's intent to change the law and to alter the *Aylsworth* court's construction of the disclaimer statute. The current statute, it argues, specifically states that the right to disclaim is barred when the devisee has encumbered the devised estate.

The Bank assumes that this court may look only to the words of the current statute to determine whether it bars disclaimer when a devisee has encumbered the devised property. The fundamental purpose of statutory construction, however, is to ascertain and give effect to the legislature's intent. (*Dornfeld v. Julian* (1984), 104 Ill. 2d 261.) In ascertaining legislative intent, courts must look not only to the language of the statute, but also to the reason and necessity for the law. (*People v. Richardson* (1984), 104 Ill. 2d 8.) Evaluating the purpose of the statute and the object it was meant to achieve is especially valuable in cases, such as this one, where it appears that the legislature did not consider or foresee the situation at hand at the time it enacted the statute.

As stated above, the *Aylsworth* court identified the evil which the legislature sought to remedy when it enacted the former disclaimer statute: that is, a devisee who dealt with or disposed of the devised estate before attempting to disclaim his interest in the estate. The legislature remedied this evil by barring persons who conveyed, assigned or contracted to convey or assign their interest in the devised estate from thereafter disclaiming their interest in the estate. The statute thereby protected persons, including creditors, who acquired the property or an interest therein by sale or other disposition from the devisee, from the risk that the devisee would later disclaim and destroy their title to the property. (See 1 W. James, Illinois Probate Law & Practice Act 125 (Supp. 1975); Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act, comment to section 4, 8A U.L.A. 106 (1983).)

Although the legislature has amended the statute barring disclaimer since the *Aylsworth* case was decided, this amendment simply clarified the language of the statute and expanded the list of transfers which would bar disclaimer to include an encumbrance or pledge of the

devised property. The legislature did not alter the object which the statute was enacted to achieve. Accordingly, we conclude that the legislature intended to bar disclaimer when the devisee attempting to disclaim has dealt with the devised estate in a manner which is inconsistent with a complete renunciation of any interest in the property being disclaimed.

In this case, unlike *Aylsworth*, Donald never acted in a manner inconsistent with a complete renunciation of the property interest devised to him. Although Donald executed a mortgage on the subject property, he did so in his capacity as the vendee under a contract for the sale of the realty, rather than as the testamentary beneficiary of his mother's estate. In the mortgage instrument, he assigned only his rights under the real estate contract, to which he was entitled independently of his mother's will. He did not expressly or implicitly assign to the Bank his expectancy under his mother's will. The Bank does not claim that it was induced to extend credit in reliance upon Donald's expectancy in the property under the will or that Donald was aware of the nature or extent of the provisions in his mother's will at the time he executed the mortgage in the Bank's favor.

As stated above, the legislature enacted section 2—7(e) and intended to bar disclaimer, not to give creditors the benefit of a windfall in which they had no right to rely, but to prevent a devisee from disclaiming an interest in a devised estate after he has already acted in a manner which is inconsistent with a complete renunciation of such interest. Because Donald encumbered only the property interest which he acquired under the real estate sale contract, and did not thereafter act in a manner inconsistent with a complete renunciation of any interest in the estate devised to him, we conclude that section 2—7(e) does not bar him from disclaiming his interest in the devised estate.

The Bank argues, too, that Donald's disclaimer is a fraudulent conveyance in violation of the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 4), which provides:

> "Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal *** made with the intent to disturb, delay, hinder or defraud creditors or other persons *** shall be void as against such creditors, purchasers and other persons."

In *In re Estate of Hansen* (1969), 109 Ill. App. 2d 283, the court addressed the contention the Bank makes and held that a disclaimer is not a conveyance within the meaning of the fraudulent conveyance statute. The *Hansen* court noted that there are jurisdictions that limit the right to disclaim a testamentary gift when the rights of creditors are implicated. The court observed, however, that prior to the enactment of our disclaimer statute our decisions had already firmly established that a disclaimer or renunciation " 'is not a voluntary conveyance and is not subject to attack by creditors.' " *Hansen*, 109 Ill. App. 2d at 291, quoting *People v. Flanagin* (1928), 331 Ill. 203, 208.

The Bank urges this court to reverse the holding in *Hansen* because the current disclaimer statute had not been enacted at the time *Hansen* was decided. It argues that the legislature has since manifested its intent to bar disclaimer when the rights of creditors are implicated.

The Bank's argument that, under the disclaimer statute, the rights of creditors take precedence over the right to disclaim is not convincing. When a beneficiary disclaims or renounces a testamentary gift, the disclaimer under the statute relates back to the time of the decedent's death and the beneficiary does not acquire any interest in the devised estate. Because nothing passes to a beneficiary who disclaims any interest in a testamentary gift, the beneficiary has no estate that

could be made the subject of a voluntary conveyance. Accordingly, we judge that *Hansen* correctly held that a disclaimer is not a voluntary conveyance or transfer of the disclaimed estate within the meaning of the fraudulent conveyance statute.

We must reject as gratuitous the Bank's contention that the legislature has manifested its intent to allow creditors to set aside a disclaimer as a fraudulent conveyance where giving the disclaimer effect will defeat the claims of creditors. The Bank cites no authority in support of its claim of legislative intendment, but simply asks this court to adopt what was rejected in *Hansen.*

Analysis of the disclaimer statute clearly shows that the legislature did not intend what the Bank proposes. Although the statute does not specifically state that a disclaimer will defeat the right of creditors to the disclaimed property, it does provide that a disclaimer will relate back "for all purposes" to the date of the decedent's death. The comments to the Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act, after which our statute is patterned, specifically define the effect of this provision upon the rights of creditors:

> *"Rights of Creditors and Others*: As regards creditors, taxing authorities and others, the provision for 'relation back' has the legal effect of preventing a succession from becoming operative in favor of the disclaimant. The relation back is 'for all purposes' which would include, among others, for the purpose of rights of creditors, taxing authorities and assertion of dower. \*\*\*
>
> \*\*\* [N]umerous cases have held that a devisee or legatee can disclaim a devise or legacy despite the claims of creditors: \*\*\* *Estate of Hansen*, 109 Ill. App. 2d 283, 248 N.E. 2d 709 (1969) (judgment creditor)." Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act, comment to section 3, 8A U.L.A. 105 (1983).

The official comments to the Uniform Act do not, of course, have the force of statutory language, but are a

permissible and typically persuasive aid in determining legislative intent. Courts may assume that the legislature adopted the legislation with the same intent evidenced by the official comments unless the language in the adopting statute unambiguously indicates the contrary. (2A A. Sutherland, Statutory Construction §48.11 (4th ed. 1984).) Both the language of our disclaimer statute and the comments of the committee that drafted that language unambiguously state that a disclaimer relates back for all purposes to the date of the decedent's death. By disclaiming a devise, a beneficiary renounces any interest in the subject matter, and nothing passes to the beneficiary upon which a creditor may impose a lien. Creditors cannot compel a beneficiary to accept a devise against his or her wishes and may not set aside a disclaimer as a conveyance within the scope of the fraudulent conveyance statute. *People v. Flanagin* (1928), 331 Ill. 203; *In re Estate of Hansen* (1969), 109 Ill. App. 2d 283; 37 Am. Jur. 2d *Fraudulent Conveyances* §§72, 73 (1968) (a debtor's refusal to assert a legal right or to accept a benefit cannot be deemed to be a conveyance which is fraudulent as to his creditors); 6 W. Page, Wills §49.5, at 43 (1960) (the creditors of a devisee cannot enforce their claims against property devised if the devisee has renounced. Such a renunciation is not a conveyance; and the creditors of the devisee cannot have it treated as a conveyance in fraud of their rights).

For the reasons given, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.