In re James & Diana Sue BRAJKOVIC,
Debtors,

John Patrick LOWE, Trustee, Plaintiff,

v.

Diana Sue BRAJKOVIC, Defendant.

Bankruptcy No. 91–53910–C.
Adv. No. 92–5009–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 6, 1993.

Richard H. Ihfe, Ihfe & Associates, P.C., San Antonio, TX, for debtor and defendant.

Michael C. Boyle, Matthews & Branscomb, P.C., Uvalde, TX, for plaintiff.

DECISION ON TRUSTEE'S COMPLAINT TO SET ASIDE FRAUDULENT TRANSFER AND TO RECOVER PROPERTY TRANSFERRED OR ITS VALUE AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for docket call the Complaint of Plaintiff John Patrick Lowe, Trustee to Set Aside a Fraudulent Transfer and to Recover Property Transferred or Its Value, and Defendant's Motion for Summary Judgment. The cause was set for trial September 28, 1992. The parties presented the case to the court on stipulated facts.

For the reasons set forth herein, the court finds and concludes that Defendant's Motion for Summary Judgment should be denied, and judgment should be entered in favor of Plaintiff.

## JURISDICTION

The principle theory on which plaintiff proceeds is that the disclaimer of devise under a will executed by Mrs. Brajkovic should be avoided as a fraudulent conveyance under 11 U.S.C. § 548(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(E) and (H). This court has jurisdiction of this proceeding. 28 U.S.C. § 1334(b).

## BACKGROUND FACTS

The parties stipulated to the facts of this case.

Walter McCune was the grandfather of Diana Sue Brajkovic, Defendant. Mr. McCune died on November 30, 1990. In his will, Mr. McCune bequeathed certain land in Missouri to Ms. Brajkovic and her brother, a one-half undivided interest to each. Ms. Brajkovic's share has a value of at least $10,000.

On August 28, 1991, Ms. Brajkovic executed a valid disclaimer, pursuant to Missouri law, renouncing her share of the bequest. As a result of the disclaimer, whatever interest Ms. Brajkovic received under her grandfather's will passed directly to her four minor children as though she had pre-deceased them. *See* Mo.Rev.Stat. §§ 473.260, 474.490. Ms. Brajkovic received no consideration for the execution of her disclaimer, and was insolvent at the time of its execution. On October 15, 1991, Ms. Brajkovic and her husband, Jim, filed for bankruptcy under chapter 7. In their Statement of Financial Affairs, the Brajkovics listed themselves as guardians for the Brajkovic children in relation to the subject property.

The defendant argues that, by virtue of the "relation back" provisions of the Missouri disclaimer statute, whatever interest she might have had in the property in question was erased by operation of law prior to bankruptcy. Thus, she maintains, not only is the property in question not property of the estate as of the bankruptcy filing (a point the trustee plaintiff of course does not contest), but also it *never was* property of the defendant, because under the Missouri statute, the disclaimer *erased* the defendant from the chain of title. So far as this proceeding is concerned, claims the defendant, she has never owned this property: it passed (as a result of her execution of the disclaimer) directly from her grandfather to her four minor children. Thus, concludes the defendant's argument, there can be no "transfer" to avoid.[1]

The plaintiff responds that we must focus on the fact of the execution of the disclaimer itself, an act which, under the generous definition of transfer found in the Bankruptcy Code, counts as a transfer, and which, under section 548, can be undone, restoring to the estate the property interest which the debtor attempted to divest. The plaintiff adds that neither the state law definitions of disclaimer nor the associated "relation back" doctrine can operate to alter the definition of "transfer" found in the Bankruptcy Code, yet that is precisely what defendant's argument, if accepted, would permit.

Plaintiff Trustee relies on a bankruptcy decision by Bankruptcy Judge Keith Lundin interpreting a similar provision found in Tennessee law. *In re Peery*, 40 B.R. 811 (Bankr.M.D.Tenn.1984). Defendant relies on a relatively recent Seventh Circuit decision by Senior District Judge Will interpreting a similar Illinois disclaimer statute. *In re Atchison*, 925 F.2d 209 (7th Cir.1991). Both statutes are substantially the same in

---

**1.** Imagine, if you will, a snake which commences consuming its own tail, and continues until all the snake is consumed, at which point there is no longer a snake. A disclaimer, according to the defendant, sets just such a process in motion, such that the property interest (the "snake") granted to the defendant under the will ceases to exist precisely because the disclaimer causes it to cease to exist by operation of law. That is the thrust of the defendant's argument. While it may be a physical impossibility for a snake to consume itself out of existence, such improbabilities are more readily entertained in the legal world. We even call them legal fictions. Thus, merely stating the analogy does not dispose of the defendant's argument.

language and structure as the Missouri statute here in question.[2]

## DISCUSSION

 In order for there to be an avoidable fraudulent conveyance under these facts, we must be able to identify a *transfer* of *an interest of the debtor in property*. *See* 11 U.S.C. § 548(a).[3] The first concept, that of a "transfer," is controlled by federal law, as this term (as it is used in section 548) is defined by the Bankruptcy Code itself. *See* 11 U.S.C. § 101(54); *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945).[4] For the second concept, "an interest of the debtor in property," we turn to state law, as the Bankruptcy Code does not define this term. *See, e.g., Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct.

2. Indeed, all three statutes are drafted after the model provision found in the Model Probate Code. *See* Uniform Probate Code, 8 Uniform Laws Annotated (West 1983). They were crafted in part to bring the disparate state laws on renunciation of gifts into conformity with the requirements of section 2518 of the Internal Revenue Code. *See generally* M. Mulligan, *Disclaimer—an Analysis of the New Missouri Statute*, 37 J.Mo.Bar 307 (July–August 1981). Qualified disclaimers are "an estate planning device which can be utilized to pass property to another without Federal estate, gift or generation-skipping tax consequences to the disclaimant." *Id.*

3. The applicable language is as follows:
 The trustee may avoid *any transfer* of *an interest of the debtor in property* ... that made or incurred within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
 (2)(A) received less than a reasonably equivalent value in exchange for such transfer ... and
 (B)(i) was insolvent on the date that such transfer was made ...
 11 U.S.C. § 548(a) (emphasis added). The parties agree that the requirements of subsection (2) are indeed met, such that the only question is whether the facts of this case make out an avoidable transfer of an interest of the debtor in property.

4. A transfer, according to the Bankruptcy Code is
 every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of *or parting with* property *or with an interest in property* ...
 11 U.S.C. § 101(54).

914, 918, 59 L.Ed.2d 136 (1979); *Matter of Gervich*, 570 F.2d 247, 251 (8th Cir.1978).

### I. Transfer

 The definition of a transfer is so broad under the Bankruptcy Code that the execution of a disclaimer should easily fall within it. *See In re Peery*, 40 B.R. 811, 813 (Bankr.M.D.Tenn.1984). If a debtor has an interest in property just prior to the disclaimer, and does not have such an interest after the disclaimer is executed,[5] then the execution of the disclaimer functioned as a mode of parting with property. 11 U.S.C. § 101(54). Under federal law, this will count as a "transfer." *Id.; In re Peery,* 40 B.R. at 813; *In re Atchison*, 925 F.2d 209, 210 (7th Cir.1991); *see also Hoecker v. United Bank of Boulder*, 476 F.2d 838, 842 (10th Cir.1973) (Holloway, J., dissenting) (construing similar provision under the Bankruptcy Act).[6]

5. For purposes of this decision, we assume perfection, as the parties have not raised that issue. *See* 11 U.S.C. § 548(d)(1).

6. Said Judge Holloway, in criticizing the holding of the majority in *Hoecker,*
 While the majority opinion recognizes that federal law is controlling as to the meaning of "transfer," it nevertheless concludes because of intent of the Colorado legislature that a disclaimer filed within the six months' period would not operate as a transfer ... and because of the relation back provision, that there was no transfer alleged in violation of § 67(d)(2) [of the Bankruptcy Act]. While the case is not free from doubt, I cannot agree. To me the question is not one of the nature or extent of rights in property or of devolution of property—matters that state law decides, it is simply whether some power or right recognized by state law was exercised so as to amount to a "transfer" within the broad meaning of the term provided by federal law in § 1(3) of the Act ... All technicality and narrowness of meaning were precluded and the word was used in its most comprehensive sense to include every means by which property could pass from the ownership and possession of another.
 The Colorado statute recognizes that there is a limited power in the disclaimant to control the passing of his interest in the property during the six months' period after the will is admitted to probate.... Thus under state law there is a power which seems to me to be a "mode, direct or indirect," of disposing or parting with his interest in the property and hence a transfer....
 ... What constitutes a transfer "... is necessarily a federal question, since it arises under a federal statute intended to have uniform application throughout the United States."

## II. An Interest of the Debtor in Property

■ The single issue, then, is whether the debtor had an interest in property to transfer just prior to the execution of the disclaimer. If so, then the disclaimer caused the debtor to part with[7] that interest, a transfer avoidable under section 548. In one sense, the question is its own answer, for there would be no need to execute a disclaimer but for the fact that, absent its execution, the debtor will own some property. Missouri law provides no mechanism (or requirement) for affirmative *acceptance* of a testamentary gift. Rather, acceptance is presumed unless expressly renounced. Mo.Rev.Stat. §§ 473.260, 474, 490 (Vernon Supp.1992); *see Sanders v. Jones*, 147 S.W.2d 424, 427 (Mo.1940). Thus, there seems to be some interest in property residing in the debtor at the moment the disclaimer is executed just by virtue of the fact that it takes a written disclaimer to get rid of it.

However, the law of the state of Missouri lends independent express support to the conclusion that the defendant did hold an interest in property prior to the execution of the disclaimer, and that the execution of the disclaimer divested the debtor of that interest. We turn to an examination of that law.

### A. Property interest created in beneficiary on date of death of decedent.

■ It is well settled under Missouri law that upon the death of a person, equitable title to a decedent's real estate passes immediately to the heirs or devisees. *See* Mo.Rev.Stat. § 473.260 (1992);[8] *Baker v. Dale*, 123 F.Supp. 364 (W.D.Mo.1954); *Missouri v. Cox*, 784 S.W.2d 244, 245 (Mo.Ct. App.1989); *In re Jackson's Will*, 291 S.W.2d 214 (Mo.Ct.App.—Springfield 1956). Missouri, like most states, follows the common law rule that favors estates vesting at the earliest possible period, to prevent the title to property from being left uncertain. *See Tindall v. Tindall*, 167 Mo. 218, 225, 66 S.W. 1092, 1094 (1902).

■ A probate estate is itself not a legal entity that can own property. A probate estate *is* the property, not the posses-

*McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 408, 89 L.Ed. 305. *Id.* The majority had concluded that, per its divination of the intent of the Colorado legislature, "... if a disclaimer was filed within the six-month period, it would not operate as a transfer by the person so disclaiming ... Accordingly, we conclude that under the Colorado statute the disclaimer did not operate as a transfer by the bankrupt of the property disclaimed to his children, and that there was no fraudulent transfer in violation of § 67(d)(2) of the Bankruptcy Act." *Id.* at 841. The majority, as the dissent correctly points out, was clearly in error, as it permitted a state statute to circumscribe the application of the federal term, in violation of clear Supreme Court precedent to the contrary. *See McKenzie, supra; see also* 1 Collier on Bankruptcy ¶ 1.30 at 130.33–130.34 (14th ed. 1974).

7. It is not important that a disclaimer does not purport to transfer property *to* someone, for the definition of "transfer" in the Bankruptcy Code focuses on the property *leaving* the debtor, without regard to where it goes (or whether it is directed). The majority in *Hoecker v. United Bank of Boulder* failed to appreciate this, as is evident from the language of the opinion:

We think it all the more clear ... that it was the intent of the Colorado legislature to provide that ... [a disclaimer] would not operate as a transfer *by* the person so disclaiming *to* the persons who would be entitled to the property under the will of the decedent if the person so disclaiming had predeceased the testator, nor as a transfer in any way of any interest in the property disclaimed; whereas, if the disclaimer was filed after the expiration of the six month period, then and only then would it operate as an assignment of the interest disclaimed *to the person or persons who would have been entitled to take it* if the person disclaiming had predeceased the testator.

*Hoecker v. United Bank of Boulder*, 476 F.2d 838, 841 (10th Cir.1973) (emphasis added). The majority is certainly correct in its observation that a timely disclaimer does not operate under state law as an affirmative transfer of property *from* the original beneficiary *to* someone else. That fact alone does not mean that the disclaimer is not a transfer for bankruptcy purposes, however.

8. When a person dies, his real and personal property, except exempt property, passes to the persons to whom it is devised by his last will, or in the absence of such disposition, to the person who succeed to his estate as his heirs; but it is subject to the possession of the executor or administrator and to the election of the surviving spouse and is chargeable with the expenses of administering the estate, the payment of other claims and allowances to the family, except as otherwise provided in this law.

Mo.Rev.Stat. § 473.260 (Vernon Supp.1992).

sor or owner of the property. The probate estate cannot possess or own; it can only *be* possessed or owned. *Missouri v. S.E.*, 675 S.W.2d 86, 87 (Mo.App.1984); *In re Estate of Cromwell*, 522 S.W.2d 36, 41 (Mo.App.1975). Thus, a testator's property is not owned by the probate estate.

 Nor is it owned by the administrator or executor of the probate estate. These persons merely take custody of the property, to discharge whatever debts burden the property before distribution; it is the beneficiary who has the real interest in the property. In fact, real property cannot even be sold through the probate court without making the named beneficiaries party to the action. *See, e.g., Clapper v. Chandler, Administrator*, 406 S.W.2d 114, 120 (Mo.App.1966).

 Although a beneficiary's interest may be of no economic value until the will is probated, an heir or devisee may nonetheless legally sell or convey this interest immediately upon the death of the testator, without waiting for probate. *Trenton Motor Company v. Watkins*, 291 S.W.2d 659, 663 (Mo.App.1956). This power of control itself constitutes a definite and irrefutable interest in property, albeit an equitable interest, which vests upon the death of the benefactor. Mo.Rev.Stat. § 473.260 (1992); *In re Jackson's Will, supra; see In re Peery*, 40 B.R. 811, 813 (Bankr.M.D.Tenn.1984). A named benefi-

ciary under a will "... has a legal and a beneficial interest in the residual estate which it acquire[s] upon the death of the testatrix." *Missouri ex rel. Eagleton v. Hon. Harry A. Hall*, 389 S.W.2d 798, 801 (Mo.1965). Title passes to beneficiaries subject only to "the possession of [the decedent's] executor or administrator for probate purposes." *In re Estate of Williamson*, 380 S.W.2d 333, 338 (Mo.1964). Undoubtedly, then, upon Mr. McCune's death, an interest in his property vested in Ms. Brajkovic under Missouri law.[9]

### B. Disclaimers under Missouri law.

 Ms. Brajkovic exercised her right under Missouri law to renounce the gift made to her by Mr. McCune. In the Missouri statute, a disclaimer is defined as a "refusal to accept a transfer" (i.e., a transfer from the decedent to the beneficiary). Mo.Rev.Stat. § 474.490 (1992).[10] It is the characterization of this act of renunciation which has led to the split in authorities over whether such disclaimers are a proper subject of avoidance actions by trustees in bankruptcy. *Compare In re Atchison*, 925 F.2d 209 (7th Cir.1991) *with In re Peery*, 40 B.R. 811 (Bankr.M.D.Tenn.1984).

### C. The problems with *Atchison.*

According to the Seventh Circuit in *Atchison*, the "interest" disclaimed is only that of a donee, who is simply electing not to accept a gift. One who never takes the

---

9. Indeed, Missouri is rather unremarkable in this regard, as the law of virtually every state specifies that equitable title in a decedent's estate vests immediately upon date of death in the beneficiaries, subject to the claims of creditors of the decedent and the costs of administration. *See generally Bostian v. Milens*, 193 S.W.2d 797, 803–04 (Mo.App.1946) and authorities therein cited.

10. The statute is similar to § 2–801 of the Uniform Probate Code, and provides in relevant part that

1. When used in this section, the following terms shall mean:

(2) "Disclaimer", an irrevocable and unqualified refusal to accept a transfer;

(3) "Effective date of the transfer,":

(a) ... the date of death of the transferor;

.　.　.　.　.

(6) "Transfer", the transfer, conveyance or conferment of any property, interest or power

from a person other than the disclaimant by operation of law or any testamentary ... instrument ... including ... the laws of intestate succession, a will ...

(7) "Transferor", any person who makes a transfer.

2. A disclaimant may disclaim any transfer by delivering a written disclaimer within the time and in the manner specified in this section.

.　.　.　.　.

4. ... the disclaimer has the same effect with respect to the disclaimed transfer as though the disclaimant died immediately prior to the effective date of the transfer.... A disclaimer under this section relates back for all purposes to the effective date of the transfer and shall not be subject to the claims of any creditor of the disclaimant.

5. A disclaimer may not be made under this section with respect to any transfer ... which the disclaimant has accepted ...

Mo.Rev.Stat., § 474.490 (Vernon Supp.1992).

gift, goes the analysis, can never be said to have held a property interest in the gift.[11]

The *Atchison* court recognizes the problem created by the settled law that property vests immediately in the named heirs as of the date of the decedent's death, but concludes that the "relation back" feature of the disclaimer statute (the Illinois statute discussed in *Atchison* is virtually identical to the Missouri statute involved in this case) cures this problem by "erasing" whatever interest the donee might technically have had. The property passes as of the date of death per the terms of the will (or per the laws of intestacy) without the original beneficiary ever showing up in the chain of title. *Atchison*, 925 F.2d at 211.[12] The disclaimer laws afford the beneficiary a statutory reasonable period of time (nine months) within which to decide not to accept the gift. The relation back doctrine then assures that there will be no lapse in title, and prevents the beneficiary from showing up in the chain of title. It also functions to avoid there being a transfer of the decedent's property to the beneficiary and another transfer back out of the beneficiary.[13]

The *Atchison* court rejects *Peery* and its progeny on grounds that they "fail to give full application to the relation back doctrine under applicable state laws." *Id.*[14] Says the Seventh Circuit,

**11.** It is worth noting that, before the codification by most states of the law of disclaimer, the common law permitted renunciation by beneficiaries under wills, but not by heirs taking by the laws of intestacy. It was thought that the former were the recipients of gifts and should be free not to accept them, while the latter had no power to prevent passage of title, as it was the law itself which vested title in an heir. Thus, for many years, federal tax law assumed that an heir who tried to rid herself of a devise was transferring property and subjected the transaction to gift tax. A beneficiary, on the other hand, suffered no gift tax liability. *See generally Comment*, Uniform Prob. Code, § 2–801(a), 8 U.L.A. 161 (West 1983). The Uniform Probate Code eliminated this distinction, permitting disclaimers regardless the source (wills or intestacy), and in the process blurred the rationale upon which *Atchison* relies. The idea that one should not have to accept a gift one does not want is one which has never applied to property received by heirs by intestacy, yet the statute does not make that distinction. In fact, the disclaimer statutes are

... designed to facilitate renunciation in order aid postmortem planning. Although present law in all states permits renunciation of a devise under a will, the common law did not permit renunciation of an intestate share. *There is no reason for such a distinction*, and some states have already adopted legislation permitting renunciation of an intestate share [including Missouri]. Renunciation may be made for a variety of reasons, including carrying out the decedent's wishes not expressed in a properly executed will.

*Comment*, Unif.Prob.Code, § 2–801, 8 U.L.A. 169 (West 1983) (emphasis added). Thus, the disclaimer statutes appear not to serve simply the purpose suggested by *Atchison*.

**12.** In the same year *Atchison* was decided, an Illinois bankruptcy court decided In re *Chenoweth*, 132 B.R. 161 (Bankr.S.D.Ill.1991). *Chenoweth* involved a *post-petition* disclaimer, however, and is distinguishable from both *Atchison* and the case at bar. The court found that the rela-

tion back doctrine did not apply in the case of a section 549 avoidance action, because, under that section, a trustee may avoid the transfer of "property of the estate," a term defined by the Bankruptcy Code itself in section 541. "Property of the estate" expressly includes a debtor's entitlement to a testamentary gift available as of the filing. In re *Chenoweth*, 132 B.R. 161, 164 (Bankr.S.D.Ill.1991). Such a property interest cannot be eliminated by a post-petition act of the debtor (such as the execution of a disclaimer) because, as a result of the bankruptcy filing, the debtor is no longer the person entitled to receive that interest. The entitlement passes to the trustee as of the date of the bankruptcy filing. *Atchison* by contrast (as well as the case at bar) involved a *pre*-petition transfer, to which the broader definitions of "property of the estate" found in section 541(a) have no relevance.

**13.** The relation-back feature of most modern disclaimer statutes is simply a codification of the common law. According to the Official Comment to the Uniform Probate Code,

[U]nless the will of the decedent or the donee of the power has otherwise provided, the disclaimed interest devolves as if the disclaimant had predeceased the decedent or the donee of the power. In every case the disclaimer relates back to the date of the death of the decedent or of the donee. The provision that the disclaimer "relate back," codifies the rule that a renunciation of a devise or legacy relates to the date of death of the decedent or donee and prevents the succession from becoming operative in favor of the disclaimant.

*Comment*, Unif.Prob.Code, § 2–801, 8 U.L.A. 165 (West 1983).

**14.** *Atchison* takes special note of the language in the disclaimer statutes that "a renunciation relates back *for all purposes* to the date of the death of the decedent ..." *Id.; see generally* Unif.Prob.Code, § 2–801(c), 8 U.L.A. 165 (West 1983). According to the Seventh Circuit, "for all purposes" means for bankruptcy purposes too— even though state law cannot dictate how federal law terms are to be interpreted. *See* discussion *infra*.

The trustee argues that the disclaimer constituted a transfer of an interest in property because when Anola executed the disclaimer she must have had an interest which could be disclaimed. *But she did not. The relation back provision of the Illinois disclaimer statute eliminated any interest Anola held at the time of the disclaimer....* [A] valid disclaimer ... *retroactively erases* any interest in the beneficiary disclaiming. Section 2–7 of the Illinois Probate Act expressly states that a disclaimer relates back to the death of the testator "for all purposes." ... *To argue, as the trustee does, that at the moment of the disclaimer there had to be some property interest which the beneficiary disclaimed ignores the express language of the disclaimer statute which says for all purposes there was not....*

All applicable state law must be construed to determine whether a debtor possesses a property interest. Although a testamentary gift passes directly to a beneficiary upon the testator's death, a valid disclaimer under Section 2–7 relates back to the testator's death for all purposes and eliminates any interest the beneficiary has in the property disclaimed. *Therefore,* we hold that the disclaimer does not constitute a transfer of an interest in property which the trustee may avoid under Section 548(a) of the Bankruptcy Code.

*Id.* at 211–12 (emphasis added). To summarize the logic of the decision, then, even though state law confers an interest in

property as of the date of death, a disclaimer is not a transfer of that interest because, *after* the disclaimer is executed, the relation back doctrine erases that interest. Therefore, as of the moment *before* the disclaimer is executed, the beneficiary has no interest in the property, so no transfer could have occurred.

Apart from (or perhaps as a result of) its obvious logical problems,[15] *Atchison* misapprehends the role that the relation back feature of the probate statutes[16] plays. As the *Peery* court correctly noted,

> [t]he ... relation back statute does not erase the fact of a transfer of the debtor's vested rights at the time of the renunciation. Instead, relation-back is a legal fiction which defines the *consequences* of having property rights vest at death and then revest in others after a valid renunciation.

*In re Peery,* 40 B.R. at 815. While *Atchison* says that the relation back feature merely defines an interest in property, that court actually *applies* the doctrine to also eliminate the *transfer.* This courts are not free to do. *See McKenzie v. Irving Trust Co.,* 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945); *KVUE, Inc. v. Moore,* 709 F.2d 922, 931–32 (5th Cir.1983).

D. The proper role for the "relation back" doctrine.

Renunciation and its relation back feature may be effective to eliminate the transfer of property from the decedent to the original beneficiary *ex post facto,*[17] but the disclaimer statute does not purport to

**15.** A cardinal rule of logic is that an argument fails to prove anything if it somehow takes for granted what it is supposed to prove. Such an argument begs the question asked. *See generally* Stephen F. Barker, The Elements of Logic 178–79, 201 (McGraw–Hill, Inc. 1965). The argument in *Atchison* suffers from just such a circularity of reasoning. In *Atchison,* the court recognizes that, immediately prior to the execution of a disclaimer, there resides in the debtor/beneficiary an interest in property, and that the debtor disposes of that interest by executing a disclaimer. The court further recognizes that this analysis would bring the execution of the disclaimer within the ambit of section 548(a). The court then seeks to avoid that consequence by announcing that the debtor did *not* dispose of an interest of the debtor in property, because the debtor did not *have* an interest in property. How does the court reach this conclusion? By

presuming that, immediately *after* the execution of the disclaimer, the property interest which existed *prior* to the disclaimer disappears, by virtue of the relation back doctrine. Therefore, the argument concludes, nothing existed *before* the transaction, so nothing was transferred. Of course, the transfer has to be executed in order for nothing to be transferred, and that is the faulty premise in *Atchison's* logic. There is a proper role for the "relation-back" feature to play, but it is not the one assigned to it by the *Atchison* court. *See* discussion *infra.*

**16.** There are similar such statutes on the books of every state. *See Comment,* Unif.Prob.Code, § 2–801, 8 U.L.A. 169 (West 1983).

**17.** And in so doing, also eliminate the original beneficiary from the chain of title.

erase the occurrence of the *disclaimer*. *See Peery*, 40 B.R. at 813. If we keep in mind that the transfer upon which we are focusing here is the execution of the disclaimer itself, as opposed to the transfer of property from the decedent to the beneficiary (which is the *object* of the disclaimer), then we will not be side-tracked by the seductive but erroneous logic of *Atchison*. What the relation back doctrine accomplishes is to shift the transfer of property from the decedent to the original beneficiary so that the transfer runs from the decedent to a different beneficiary as of the date of death. It does not shift the timing of the disclaimer itself (much less eliminate the fact that it happened).[18]

■■■ States are of course free to define property interests as they see fit, and federal courts applying the Bankruptcy Code must rely on (and are bound by) state law to determine those property interests. States are *not* free, however, to redefine terms used in the Bankruptcy Code itself. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369, 65 S.Ct. 405, 407, 89 L.Ed. 305 (1945); *In re Hulm*, 738 F.2d 323 (8th Cir.), *cert. den.*, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984); *In re Madrid*, 725 F.2d 1197 (9th Cir.), *cert. den.*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984); *see also Lovett v. Shuster*, 633 F.2d 98 (8th Cir. 1980); *In re Christian*, 48 B.R. 833 (D.Colo.1985). When a beneficiary executes a disclaimer, she "parts with" an "interest in property," i.e., her vested, albeit inchoate, interest in property of the decedent. The moment prior to the execution, she has an equitable interest. The moment after, she does not. That is a transfer, pure and simple, and no matter what state law says the *effect* of such a disclaimer might be, state law may *not* define the transfer away if, as of the moment of execution, all the requisites for transfer under the Bankruptcy Code are present. No matter how it redefines prop-

erty interests the moment *after* the execution of the disclaimer, Missouri law does not purport to rewrite property interests for the time *before* the execution of the disclaimer. Nor may it, because by doing so, state law would operate to define the *transfer* out of existence after the fact.

Yet that is precisely how the *Atchison* court interprets the relation-back doctrine—to eliminate the transfer by defining it out of existence. As soon as it happens, as it were, it never happened. Granted, for probate purposes, it is essential that the timing of the *effect* of a disclaimer be as of the date of death, to prevent title to property from being left uncertain, and to prevent the property showing up in the chain of title in the name of the disclaiming beneficiary. *See Sanders v. Jones*, 347 Mo. 255, 147 S.W.2d 424 (1940), *citing In re Estate of Howe*, 112 N.J.Eq. 17, 163 A. 234 (1932). But just as certainly, under Missouri law, immediately *prior* to the execution of the disclaimer, equitable title was in the disclaiming beneficiary. *Bostian v. Milens*, 193 S.W.2d 797 (Mo.App.1946). Just prior to the execution of the disclaimer, the beneficiary had the right to assign her equitable interest in the property, or to sell it, or to pledge it for credit or to otherwise exercise dominion and control over it. The law of the State of Missouri located equitable title in the property in the defendant up until the moment the disclaimer was executed. That she is deemed never to have held an interest immediately *after* signing the disclaimer tells us only that the effective date of the "parting with ... an interest of the debtor in property" was the date of the decedent's death. It does not override or eliminate the fact that, in disclaiming, the beneficiary ridded herself of an interest in property.

E. Policy questions.

■■■ Defendant argues that the *Peery* result confers a windfall on the trustee, as

---

**18.** *Atchison's* citation to *Tompkins State Bank v. Niles*, 127 Ill.2d 209, 130 Ill.Dec. 207, 212, 537 N.E.2d 274, 279 (1989) is correct as a precise restatement of the words of that case only. The clear import of the Illinois decision is that renunciation prevents the beneficiary from ever receiving the gift in the first place, such that the property passes on the date of death to the heirs. That is not the same thing as saying, as does *Atchison*, that the execution of the disclaimer *itself* is deemed to have occurred on the date of the decedent's death. The *effect of the disclaimer* is that the *property disclaimed* descends as if the disclaimant had predeceased the decedent. Ill.Rev.Stat., ch. 110½, ¶ 2–7(d).

creditors could not reach the property in question under Missouri law. *See* Mo.Rev. Stat. § 474.490; *Bostian v. Milens,* 193 S.W.2d 797, 804 (Mo.App.1946). But as the *Bostian* court recognized (in a case decided under the Act) whether the fund in question is subject to creditor seizure under non-bankruptcy law is not the relevant question. All property that could by any means have been transferred is subject to recovery. *Bostian, supra; see also Pollack v. Meyer Bros. Drug Co.,* 233 Fed. 861, 869; (8th Cir.1916) *see also Glosband v. Watts Detective Agency, Inc.,* 21 B.R. 963, 971 (D.Mass.1981) ("property" as used in section 548 should be interpreted most generously). The avoidance statutes confer on a trustee in bankruptcy rights and powers not otherwise available to creditors in a non-bankruptcy setting. *See, e.g.,* 11 U.S.C. §§ 544(a)(3), 544(b), 547(b), 548(a). If there is a windfall, then, it is one intended by Congress.

▪ Were we to balance on a hierarchical scale the value of a beneficiary's right to renounce and a trustee's right to recover property, the balance would tilt in favor of the trustee. The only reason we have disclaimer statutes in the first place is to vindicate the common law notion that a person should not be required to accept a gift that imposes burdens on the recipient. *Bostian v. Milens,* 193 S.W.2d at 802. Of course, in many, many cases, no such burden is imposed, but the law nonetheless continues to permit disclaimers. Today, their execution is primarily tax-motivated, as they dovetail with provisions of the Internal Revenue Code which spare properly executed disclaimers from tax consequences, and so serve as an estate-planning device.[19] *See* 26 U.S.C. § 2518; *see also* M. Mulligan, *Disclaimer—An Analysis of the New Missouri Statute,* 37 J.Mo.Bar 307, 307 (July–August 1981).

▪ That a beneficiary who is also insolvent may find such transactions unwound in bankruptcy certainly does not hurt the beneficiary. Whatever burdens accompanied the property will be the burdens of the trustee, not the debtor. The subsequent recipients certainly may have cause to complain, but they also have the defenses of section 550(b)(1), which should, in the usual case, be more than adequate to preserve legitimate expectations. 11 U.S.C. § 550(b)(1).[20] And the debtor cannot complain that her intentions to assure that the property pass to her children, for example (as is the case here), are frustrated by this ruling, as the disclaimer statutes are themselves explicit that the disclaiming beneficiary does *not* have the right to designate to whom the property in question will then devolve. Mo.Rev.Stat., § 474.- 490(4), (5) (Vernon Supp.1992); *see generally* Unif.Prob.Code, § 2–801(c).[21]

### III. Fraudulent Conveyance Established

The parties agree in their Pre–Trial Order that, should the Court find in favor of the Plaintiff, Trustee Lowe, on the issue of the existence of an interest in property, then the remaining requirements of 11 U.S.C. § 548(a)(2) have been met. The court here finds that an interest in property was created in Ms. Brajkovic on the day of her Grandfather's death, and that a transfer of that interest occurred upon the execution of the disclaimer. The transaction thus meets all the requirements of a voidable fraudulent transfer. 11 U.S.C. § 548(a)(2).

### CONCLUSION

Having determined that Missouri state law creates an interest in property that

---

**19.** It would appear that this was one of the motivations behind the execution of the disclaimer here, as it permitted vesting in the children without having to be passed through the parents' estate, where there might be adverse gift tax consequences.

**20.** The trustee may not recover under section (a)(2) of this section from—
 (1) a transferee that takes for value ... in good faith, and without knowledge of the voidability of the transfer avoided ...

11 U.S.C. § 550(b)(1).

**21.** In fact, the whole point here is that the original beneficiary chooses not to accept the gift. Getting to designate to whom the property will then go would be "an acceptance of the property or interest *or benefit thereunder*" within the meaning of the statute. *See generally* Unif.Prob.Code, § 2–801(d)(1)(iii). Once there has been such an acceptance, the right to renounce would be barred. *Id.*

vests immediately upon death of benefactor, that this interest is not eliminated by the relation back doctrine, and that this interest is transferred by the execution of a valid disclaimer, the court concludes that Ms. Brajkovic's execution of a disclaimer from her grandfather's was a transfer voidable by the trustee under section 548 of the Bankruptcy Code. Judgment will accordingly be entered in favor of plaintiff, voiding the transfer and ordering the inclusion of the property the subject of the disclaimer in the estate, for administration by the trustee. An order will also be entered denying the motion of defendant for summary judgment. The trustee is directed to prepare appropriate forms of order and judgment.