In re Charles D. and Deborah L. BRIGHT, Debtors.

Edmund J. Wood, Chapter 7 Trustee, Appellant,

v.

Kelsey Bright and John Doe Bright; Jessica Leigh Bright and John Doe Bright II; Lindsey Elizabeth Bright and John Doe Bright III; Jenna Louise Bright and John Doe Bright IV, Appellees.

BAP No. WW–98–1867–BoRyK.
Bankruptcy No. 97–11062.
Adversary No. 98–11640.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 24, 1999.

Decided Nov. 4, 1999.

Ronald W. Gross, Seattle, WA, for Edmund Wood, Trustee.

Michael Klein, Seattle, WA, for Kelsey, Jessica, Lindsey and Jenna Bright.

Before BOWIE [1], RYAN and KLEIN, Bankruptcy Judges.

---

1. Hon. Peter W. Bowie, Bankruptcy Judge for the Southern District of California, sitting by designation.

## *OPINION*

BOWIE, Bankruptcy Judge.

### I

### OVERVIEW

In November of 1996 the debtor's father passed away. The debtor was named as a beneficiary under the will. Three months later, the debtor disclaimed his interest in the bequest. Under the terms of the will the disclaimed property passed to the debtor's children. Five months after disclaiming, the Debtor and his wife filed a petition under Chapter 7.[2] The Trustee has sued the children to recover the disclaimed property as a fraudulent conveyance.

There are no factual disputes. The only issue is whether the debtor's prepetition disclaimer of an inheritance under the will amounted to a "transfer of an interest of the debtor in property ..." as that phrase is used in § 548.

The Bankruptcy Court held that because the Washington statute provides that the disclaimer relates back to before the death of the testator, the debtor did not, under Washington law, have an interest in the bequest which could be transferred. Appellant argues that the legal fiction of "relation back" created by the state statute should not be read to trump the Bankruptcy Code.

We **AFFIRM.**

### II

### FACTS

On November 28, 1996, Aylmer Bright died testate, that is, leaving a valid will ("Will"). Under the Will, one-fourth of his estate, valued at more than $150,000, passed to his son Charles Bright, the debtor herein ("Debtor"). On March 5, 1997, the Debtor filed a "Disclaimer" in the Superior Court of Washington, disclaiming any interest under the Will. The result of the Disclaimer under both Washington state law and the terms of the will was that the Debtor's share passed to his four children.

At the time of the Disclaimer, the Debtor and his wife had judgments and unsecured debts totaling in excess of $149,000, and secured claims in excess of $562,000.

On August 19, 1997, the Debtor and his wife filed a joint petition under Chapter 7 of the Bankruptcy Code. On August 25, 1997, Edmund J. Wood was appointed as trustee of the bankruptcy estate ("Trustee").

On September 14, 1998, the Trustee commenced an adversary proceeding against the Debtor's four children ("Defendants") to recover the amounts they received under the Will due to the Disclaimer. The Trustee's theory is that the Disclaimer amounted to a transfer of an interest in property for less than reasonable value and was thus a fraudulent conveyance. The Defendants moved for a judgment on the pleadings. At the hearing on November 6, 1998, Judge Overstreet, in reliance on *In re Simpson,* 36 F.3d 450 (5th Cir.1994), ruled that the "relation back" feature of the Washington disclaimer statute "prevents the debtor from ever having acquired any interest under the will; and [because] he never acquired any interest under the will, he couldn't have transferred anything to his children." Transcript, Nov. 6, 1998, page 15, lines 12–15. The court entered its order on November 23, 1998, and on November 30, 1998, the Trustee filed a notice of appeal.

### III

### STANDARD OF REVIEW

■ The Panel reviews conclusions of law, including the bankruptcy court's interpretation of the Bankruptcy Code, de novo.

---

**2.** Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

*In re Pardee,* 218 B.R. 916, 919 (9th Cir. BAP 1998) (citing *In re Federated Group, Inc.,* 107 F.3d 730, 732 (9th Cir.1997)).

## IV

## DISCUSSION

### Washington Disclaimer Law

▉ Under Washington law, property passed under a will is deemed to vest in the beneficiary immediately upon the death of the testator. Wash.Rev.Code § 11.04.250 (West 1965). A beneficiary, however, has nine months to disclaim any interest in the testamentary gift. Wash. Rev.Code § 11.86.021(1) (West 1989). Such a disclaimer passes the disclaimed interest as if the disclaimant died immediately prior to the date of transfer of the interest. Wash.Rev.Code § 11.86.041 (West 1997). As explained by the Supreme Court of Washington:

> At common law and under our current statute, a properly executed and delivered disclaimer passes the disclaimed interest as if the disclaimant "died immediately prior to the date of the transfer of the interest." Wash.Rev.Code § 11.86.041(1). So long as a disclaimer is properly executed and timely delivered, the legal fiction of "relation back" treats the interest as having never passed to the intended beneficiary or heir at law.

*Matter of Estate of Baird,* 131 Wash.2d 514, 518, 933 P.2d 1031 (1997) (amended on denial of reconsideration.) The Washington statute provides that the disclaimer relates back to prior to the death of the testator "for all purposes." Wash.Rev.

Code § 11.86.041 (West 1997). Thus, under Washington law, a beneficiary who disclaims an interest under a will is deemed never to have held that interest.

### Fraudulent Conveyance Under the Bankruptcy Code

▉ Section 548 authorizes a trustee to "avoid any transfer of an interest of the debtor in property." Thus, before a court reaches the elements of fraudulent conveyance, such as "reasonably equivalent value," the court must determine that there was a transfer of property in the first place.[3] This is the issue before the Panel—we must decide whether the state law relation back provision should be respected to defeat an avoidance action under § 548. There are divergent lines of cases on this issue.

### Courts Holding Disclaimer is Not a Transfer of an Interest in Property under § 548

The view that the relation back should be respected was ably expressed by the Seventh Circuit in *In re Atchison,* 925 F.2d 209 (7th Cir.1991):

> The sole question is whether Anola's disclaimer was a "transfer of an interest of the debtor in property" which the trustee may avoid under Section 548(a). The Bankruptcy Code defines the word "transfer" to include "every mode ... of ... parting with ... an interest in property", 11 U.S.C. § 101(50), but it does not define what constitutes an interest in property. Absent a federal provision to the contrary, a debtor's interest in property is determined by applicable state law. *See Butner v. United States,* 440

---

3. The existence of an interest in "property" is a question of state law while the issue of whether such property was "transferred," is one of federal law. *In re Loken,* 175 B.R. 56, 60 (9th Cir. BAP 1994). Appellant suggests that since the term "transfer" precedes the phrase "interest in property" the issue of "transfer" ought to be determinative. The Panel rejects this approach. The better reasoned approach is to determine whether the object, "property" in this case, exists before

determining whether an act, "transfer" here, has occurred with respect to the object—action concepts such as "transfer" cannot exist independent of their objects. Furthermore, the definition of transfer under § 101(54) requires a parting with "property or with an interest in property ..." Thus, were a court to set out to determine whether a transfer occurred, it would first have to determine whether there was an interest in property to be transferred.

U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In the Matter of Chicago, Rock Island and Pacific Railroad Co.,* 772 F.2d 299, 302 (7th Cir.1985), cert. denied, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *In re Detlefsen,* 610 F.2d 512, 515 (8th Cir.1979). The parties agree that Illinois law controls.

Under Illinois law, Anola's testamentary gift passed directly to her upon her father's death. She chose to exercise her right to reject the property by executing a disclaimer. Once the disclaimer was executed, the property passed as if Anola had predeceased her father and the disclaimer related back to the date of his death "for all purposes." Therefore, the effect of the disclaimer was to prevent Anola from ever acquiring an interest in the property.

925 F.2d at 210–211 (Illinois citations omitted). This same result was reached by the Tenth Circuit in *Hoecker v. United Bank of Boulder,* 476 F.2d 838 (10th Cir.1973), and the Fifth Circuit in *In re Simpson,* 36 F.3d 450 (5th Cir.1994) (adopting the reasoning and conclusion of *Atchison*). The Washington disclaimer statute, Wash.Rev. Code § 11.86.041 (West 1997), is for all relevant purposes identical to the Illinois statute—as discussed above it provides that the disclaimer relates back "for all purposes."[4]

**Cases Holding to the Contrary**

In *In re Brajkovic,* 151 B.R. 402, 405 (Bankr.W.D.Tex.1993), the court provided a different approach:

> The single issue, then, is whether the debtor had an interest in property to transfer just prior to the execution of the disclaimer. If so, then the disclaimer caused the debtor to part with that interest, a transfer avoidable under section 548. In one sense, the question is its own answer, for there would be no need to execute a disclaimer but for the fact that, absent its execution, the debt-

---

4. The Washington disclaimer provision substantially conforms with the Uniform Probate

or will own some property. Missouri law provides no mechanism (or requirement) for affirmative acceptance of a testamentary gift. Rather, acceptance is presumed unless expressly renounced. Thus, there seems to be some interest in property residing in the debtor at the moment the disclaimer is executed just by virtue of the fact that it takes a written disclaimer to get rid of it.

*Id.* at 406. (Citations omitted). The court went on to point out "[t]he problems with *Atchison*":

> According to the Seventh Circuit in *Atchison,* the "interest" disclaimed is only that of a donee, who is simply electing not to accept a gift. One who never takes the gift, goes the analysis, can never be said to have held a property interest in the gift.
>
> The *Atchison* court recognizes the problem created by the settled law that property vests immediately in the named heirs as of the date of the decedent's death, but concludes that the "relation back" feature of the disclaimer statute (the Illinois statute discussed in *Atchison* is virtually identical to the Missouri statute involved in this case) cures this problem by "erasing" whatever interest the donee might technically have had. The property passes as of the date of death per the terms of the will (or per the laws of intestacy) without the original beneficiary ever showing up in the chain of title. *Atchison,* 925 F.2d at 211. The disclaimer laws afford the beneficiary a statutory reasonable period of time (nine months) within which to decide not to accept the gift. The relation back doctrine then assures that there will be no lapse in title, and prevents the beneficiary from showing up in the chain of title. It also functions to avoid there being a transfer of the decedent's property to the beneficiary and another transfer back out of the beneficiary.

---

Code § 2–801. *Baird,* 131 Wash.2d at 518, 933 P.2d 1031.

The *Atchison* court rejects *Peery* and its progeny on grounds that they "fail to give full application to the relation back doctrine under applicable state laws." Id.

. . . .

To summarize the logic of the [*Atchison*] decision, then, even though state law confers an interest in property as of the date of death, a disclaimer is not a transfer of that interest because, after the disclaimer is executed, the relation back doctrine erases that interest. Therefore, as of the moment before the disclaimer is executed, the beneficiary has no interest in the property, so no transfer could have occurred.

Apart from (or perhaps as a result of) its obvious logical problems, *Atchison* misapprehends the role that the relation back feature of the probate statutes plays. As the *Peery* court correctly noted,

> [t]he ... relation back statute does not erase the fact of a transfer of the debtor's vested rights at the time of the renunciation. Instead, relation-back is a legal fiction which defines the consequences of having property rights vest at death and then revest in others after a valid renunciation.

*In re Peery*, 40 B.R. at 815. While *Atchison* says that the relation back feature merely defines an interest in property, that court actually applies the doctrine to also eliminate the transfer. This courts are not free to do.

*Brajkovic*, 151 B.R. at 407–09 (citations and footnotes omitted).[5]

The *Brajkovic* court, however, finds a detractor in its own circuit court:

> The *Brajkovic* court, unlike the *Atchison* court, does not give state law its full effect. Under Texas law, the beneficiary never possesses the disclaimed property. *Dyer v. Eckols*, 808 S.W.2d 531, 534 (Tex.Ct.App.–Houston 1991). Thus,

the *Brajkovic* court erred in concluding that under Texas law, the property of the decedent shifts to the first beneficiary and then to the next beneficiaries. *Simpson*, 36 F.3d at 452.

Appellant naturally suggests that the Panel follow the reasoning of the courts in *Brajkovic* and *Peery*, and reject the circuit decisions of *Hoecker*, *Simpson*, and *Atchison*. While none of the cases are controlling in this circuit, on the weight of the authority alone, the Panel finds the latter cases more persuasive. *Hoecker*, *Simpson*, and *Atchison* are circuit decisions. Furthermore, *Brajkovic* and *Stevens* were effectively overruled by *Simpson*. But, there is more.

In addition to the cases discussed above, Appellant cites to non-disclaimer cases arguing that the transfers and the properties involved are analogous to the disclaimer situation.

### Non–Disclaimer Cases

Appellant relies upon cases holding that the election to carry forward net operating losses (NOLs) can be a transfer of property for the purposes of § 548. Under federal income tax law, an entity may apply NOLs retroactively to offset prior income—usually resulting in a refund. Conversely, the entity may elect to forego retroactive application and apply the NOLs on a going forward basis. Such elections have indeed been attacked by trustees as fraudulent conveyances. Appellant cites specifically to *In re Russell*, 927 F.2d 413 (8th Cir.1991), in which the election to forego retroactive application of an NOL was deemed a fraudulent conveyance. Similarly, the court in *In re Feiler*, 218 B.R. 957, 961 (Bankr.N.D.Cal. 1998), aff'd, *In re Feiler*, 230 B.R. 164, 168 (9th Cir. BAP 1999), held that the trustee may avoid a debtor's prepetition irrevocable election under the Internal Revenue Code to carry forward NOLs (as opposed to applying them retroactively and provid-

---

5. Other cases holding that a disclaimer can be a fraudulent conveyance are in *In re Peery*, 40 B.R. 811 ( Bankr.M.D.Tenn.1984), and *In re Stevens*, 112 B.R. 175 (Bankr.S.D.Tex.1989).

ing a refund to the bankruptcy estate). *Feiler*, 218 B.R. at 962. However, the bankruptcy court in *Feiler* specifically distinguished the NOL situation from the disclaimer situation:

> Debtors made an affirmative act that altered their rights. In somewhat analogous situations, debtors have engaged in affirmative acts by executing disclaimers to inheritances. The courts have held that such transactions cannot be attacked as fraudulent transfers because, using a relation-back doctrine under applicable state law, the disclaimers prevented the property from ever vesting in the debtors. Thus, the debtors did not have any interest in property to transfer in fraud of their creditors. *In re Simpson*, 36 F.3d 450, 452 (5th Cir. 1994); *In re Atchison*, 925 F.2d 209 (7th Cir.), cert. denied sub nom., *Jones v. Atchison*, 502 U.S. 860, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991). Cf. *Mapes v. United States*, 15 F.3d 138, 141 (9th Cir.1994) (federal tax lien could not attach to property properly disclaimed under state law). There is no federal counterpart to those state statutes here. In this case, Debtors did possess an interest in property. In a case where a debtor loses rights as a result of inaction, such as by not filing suit and permitting a statute of limitations to expire, another result might occur. However, this court need not decide the result if Debtors failed to perform such an affirmative act.

*Feiler*, 218 B.R. at 961 fn. 8. The Panel agrees that the NOL situation is not analogous to the disclaimer situation.

Appellant also relies upon *In re Bakersfield Westar, Inc.*, 226 B.R. 227 (9th Cir. BAP 1998), which dealt with revocation of a subchapter S election. In that case "[d]ue to the prepetition revocation of the debtor's subchapter S election ... the debtor's bankruptcy estate did not succeed to the debtor's subchapter S tax attributes because the attributes had already passed through to the Saunders." *Id.* at 229.

The trustee's complaint alleged that the revocation "shift[ed] to the debtor the significant capital gains tax burden that would arise from the future sale" of the debtor's assets. *Id.* The Panel began by reiterating the source of law: "In the absence of federal law, state law determines whether a debtor possesses an interest in property. However, a debtor's subchapter S status is a creation of I.R.C. § 1362, and federal law therefore determines whether a debtor holds a 'property' interest in its subchapter S status." *Id.* at 233 (citations omitted). Thus, the decision is not an appropriate source for the determination of "property" in this case—here we do have an absence of federal law so the proper focus is on Washington state law.

Appellant also cites to *In re Loken*, 175 B.R. 56, 60 (9th Cir. BAP 1994), in which the BAP held that state law relation-back statutes do not apply to determine when a security interest is perfected for purposes of preference analysis. The holding was, however, predicated on the existence of a countervailing federal provision on the same issue. In *Loken*, the Panel was comparing the impact of an Oregon statute giving a seller 20 days to perfect to § 547(e)(2)(B), which provides that perfection within 10 days will be deemed to be as of the day the security interest arose. Further, in *Loken*, the Panel found support for its position in congressional history (Congress had set the period in § 547 at 10–days to correspond with the Uniform Commercial Code and to set one uniform grace period). In the case of fraudulent conveyances and disclaimers, there is no such history and there is no countervailing federal provision. The only relation-back provision is found in the state statute. The Panel is not faced with the decision to apply one or the other. This analysis also applies to distinguish *In re Walker*, 77 F.3d 322 (9th Cir.1996).

The Panel holds that none of the non-disclaimer cases relied upon by the Appellant are either controlling or persuasive here.

### Disclaimers Subject to Gift Taxes

Appellant also argues that since under federal law a disclaimer is considered a transfer for gift tax purposes, it should also be a transfer for fraudulent conveyance purposes.

The Internal Revenue Code of 1986 taxes "the transfer of property by gift," 26 U.S.C. § 2501(a)(1), "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." Indeed, the Supreme Court held in *Jewett v. Commissioner*, 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982), that "the statutory language ... unquestionably encompasses an indirect transfer, effected by means of a disclaimer, of a contingent future interest in a trust," the practical effect of such a transfer being "to reduce the expected size of [the taxpayer's] taxable estate and to confer a gratuitous benefit upon the natural objects of [her] bounty." *Jewett*, 455 U.S., at 310, 102 S.Ct., at 1087.[6]

In *Jewett* the Court reasoned that state-law relation-back provisions were not designed to avoid taxation and thus there was no reason to apply them to do so. That is, the purpose of the state-law provision was not being thwarted. Appellant's apparent position is that since the relation-back provisions are not designed to allow would-be beneficiaries to divert assets from their creditors, then they should not be applied to avoid the ramifications of § 548. The underlying assumption is not, however, correct.

In *U.S. v. Irvine*, 511 U.S. 224, 114 S.Ct. 1473, 128 L.Ed.2d 168 (1994), the Supreme Court, discussing the holding in *Jewett*, explained that the purpose of state law relation-back statutes was precisely to avoid inheritances from going to creditors:

Cases like *Jewett* and this one illustrate as well as any why it is that state property transfer rules do not translate into federal taxation rules. Under state property rules, an effective disclaimer of a testamentary gift is generally treated as relating back to the moment of the original transfer of the interest being disclaimed, having the effect of canceling the transfer to the disclaimant ab initio and substituting a single transfer from the original donor to the beneficiary of the disclaimer. Although a state-law right to disclaim with such consequences might be thought to follow from the common-law principle that a gift is a bilateral transaction, requiring not only a donor's intent to give, but also a donee's acceptance, state-law tolerance for delay in disclaiming reflects a less theoretical concern. An important consequence of treating a disclaimer as an ab initio defeasance is that the disclaimant's creditors are barred from reaching the disclaimed property. The ab initio disclaimer thus operates as a legal fiction obviating a more straightforward rule defeating the claims of a disclaimant's creditors in the property disclaimed.

The principles underlying the federal gift tax treatment of disclaimers look to different objects, however. As we have already stated, Congress enacted the gift tax as a supplement to the estate tax and a means of curbing estate tax avoidance. Since the reasons for defeating a disclaimant's creditors would furnish no reasons for defeating the gift tax as well, the *Jewett* Court was undoubtedly correct to hold that Congress had not meant to incorporate state-law fictions as touchstones of taxability when it enacted the Act.

511 U.S. at 239–40, 114 S.Ct. at 1481–82, (internal citations omitted).

The implication is that had the purpose of the state law provision been applicable to the proposed federal application as opposed to "look[ing] to different objects," it would likely have been recognized—that is, if a state deems it appropriate to provide a

---

6. An exception is provided if the disclaimer is made unequivocally and within a reasonable time after knowledge of creation of the interest. Treasury Reg. § 25.2511–1(c)(2).

mechanism whereby assets are diverted from creditors, this objective should be respected by the federal court. As discussed below, this is indeed one objective of the state statutes.

**Treatment of Disclaimers in Other States**

The vast majority of state courts which have addressed the issue of whether a disclaimer can constitute a fraudulent conveyance under state law have held that it cannot.

In Texas, for example, the disclaimer statute specifically provides that it is effective against creditors:

> Section 37 of the [Texas] Probate Code provides that when a person dies, leaving a lawful will, the devised property vests immediately in the devisees. Section 37A, however, states that "any person" may disclaim any property he is entitled to receive from a decedent's estate and that such a disclaimer "shall be effective as of the death of the decedent and shall relate back for all purposes to the death of the decedent and is not subject to the claims of any creditor of the disclaimant."

*Parks v. Parker*, 957 S.W.2d 666, 669 (Tex. App.1997) (quoting Tex.Prob.Code Ann. § 37A (1998)). The Texas courts have consequently held that a disclaimer can not be a fraudulent transfer because the Probate Code treats the property as if the person disclaiming never possessed it. *Dyer v. Eckols*, 808 S.W.2d 531, 534 (Tex. App.1991, writ dism'd by agr.)

Likewise, the Supreme Court of Virginia has held that a disclaimer of an interest under an insurance policy could not be attacked as a fraudulent conveyance because the statute provided that a disclaimer related back for all purposes. *Abbott v. Willey*, 253 Va. 88, 479 S.E.2d 528, 530 (1997), *see also Frances Slocum Bank and Trust Co. v. Estate of Martin*, 666 N.E.2d 411, 415 (1996) (applying Indiana law); *Tompkins State Bank v. Niles*, 127 Ill.2d 209, 130 Ill.Dec. 207, 537 N.E.2d 274, 278 (1989) (Illinois law); *Baltrusaitis v. Cook*, 174 Mich.App. 180, 435 N.W.2d 417 (1988) (disclaimer of life insurance proceeds not fraudulent conveyance under Michigan law); and *Pennington v. Bigham*, 512 So.2d 1344 (1987) (disclaimer by insolvent devisee is not fraudulent conveyance under Alabama law).

Appellant cites to *In re Kalt's Estate*, 16 Cal.2d 807, 108 P.2d 401 (1940), in which the California Supreme Court held that a renunciation of a legacy under a will four years after the death of the decedent and after judgment creditors had levied on the assets of the legatee was a fraudulent conveyance. While the court discussed the concept of relation back, it had not yet been codified:

> A renunciation cannot serve to defeat the claims of creditors unless it is related back to the date of the testator's death. The fiction of "relation back" is occasionally employed to protect the rights of third parties. It cannot be invoked to destroy rights it was designed to protect without gross distortion. In the present situation its application would deprive the creditor of the renouncing legatees of the only means of satisfying his judgments, merely to yield a windfall to the ultimate recipient of the property.

16 Cal.2d 807, 812, 108 P.2d 401, 403. The case has since been overruled by California Probate Code § 283 which specifically excludes disclaimers as transfers for fraudulent conveyance purposes: "Section 283 ... rejects the rule of *Estate of Kalt*, 16 Cal.2d 807, 108 P.2d 401 (1940), that the disclaimer of a legacy after the testator's death may be a fraudulent conveyance." Cal.Prob.Code § 283 (West 1991) (comments).

This same analysis applies to *In re Estate of Reed*, 566 P.2d 587 (Wyo.1977), in which the concept of relation back was not even discussed, and *Stein v. Brown*, 18 Ohio St.3d 305, 18 O.B.R. 352, 480 N.E.2d 1121 (1985), in which there was no relation-back statute.

There are no Washington cases on this point. However, the court in *Baird* suggested that under Washington law, a devisee could avoid a testamentary gift and thus deprive his creditors of access to the assets if the disclaimer is valid. 131 Wash.2d at 519, 933 P.2d 1031 (the Washington court cited *Atchison* for the proposition that a prepetition disclaimer precludes the testamentary gift from becoming part of the bankruptcy estate.)

**Policy Considerations**

The Appellant finally argues that, as a matter of policy, § 548's purpose of equitable distribution of the debtor's property to rightful creditors should not be thwarted by a state law "legal fiction." At first blush, this appears a compelling concern—it does not seem appropriate to allow a debtor to execute a disclaimer thus "rerouting" his share under a will to his heirs at the expense of his creditors. However, it is important to realize that the state law "legal fiction" of relation back is necessary only because of the related state law vesting the property in the devisee immediately upon the death of the testator.[7] As explained by the court in *Brajkovic*, the immediate vesting is a common law practice designed to prevent the title to property from being left uncertain. 151 B.R. at 406. This is required because neither the probate estate nor the estate administrator can own the property. *Id.* at 406–07. Immediate vesting is in essence a matter of administrative convenience.

In the absence of a relation-back provision a beneficiary would be compelled to accept a testamentary gift whether he wished to take or not. The court in *Atchison* explained that a beneficiary is presumed to have accepted the testamentary gift but that the disclaimer serves to overcome the presumption. 925 F.2d at 211. "A debtor's disclaimer relates back to the

death of the testator whether or not it adversely affects the interest of creditors. The relation back doctrine favors the right of beneficiaries to reject a gift over competing interests." *Id.* (citation omitted). As explained by the Supreme Court of Washington in *Baird*, "[s]tatutory disclaimers have their roots in the common law principle that a beneficiary under a will has the right to disclaim or renounce a testamentary gift. This rule was based on the theory that no one could be forced to accept a gift." 131 Wash.2d at 517–18, 933 P.2d 1031 (citations omitted).

When read as an integral part of the whole testamentary gift structure, the legal fiction of "relation back" is not offensive. It is simply a means of enabling the administrative expedient of immediate vesting while respecting the common law notion that one cannot be compelled to accept a gift.

## V

### CONCLUSION

For all of the foregoing reasons, we **AFFIRM** the bankruptcy court's ruling that under Washington law, the Debtor had no interest in property to transfer and thus the Disclaimer does not satisfy the fraudulent conveyance provisions of § 548.

---

7. Wash.Rev.Code § 11.04.250 (West 1965) provides in relevant part:

When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws.